THOMAS BRENDLE v. SAMUEL SPENCER *et al.,* Receivers of the Richmond and Danville Railroad Company.

(Decided December 19, 1899.)

*Willful or Wanton Injury—Contributory Negligence.*

1. It is settled that contributory negligence, even if admitted, is no defense to willful or wanton injury.

2. The finding of such injury by the jury eliminates all questions of negligence on both sides.

3. The defendant company is responsible for the willful and wanton injury occasioned by its employees, while on duty, in its service.

4. Where the defendant's engineer, on a passing train, blew the whistle loud and shrill to frighten the horses driven by the plaintiff, and the horses take fright and run away, and the plaintiff is injured, the defendant is responsible.

CIVIL ACTION for damages for personal injuries occasioned by the alleged wanton and willful conduct of defendants' employees, tried before *Starbuck, J.,* at June Term, 1899, of the Superior Court of SWAIN County.

The whole case is covered by the opinion.

*Messrs. G. F. Bason,* and *F. H. Busbee,* for appellants.

*Messrs. T. H. Cobb, R. L. Leatherwood,* and *G. S. Ferguson,* for appellee.

DOUGLAS, J.   This is a civil action for damages against the defendants as receivers of the Richmond & Danville Railroad Company, caused by the alleged negligent and willful conduct of the defendants' servant in frightening horses driven by the plaintiff.

The plaintiff alleged in his complaint, that while driving a pair of horses to a hack one-half mile up the Tuckaseigee River from Bryson City, he went into the mouth of Deep Creek to water his horses, and that while his horses were so being watered, the defendant ran one of its trains over the trestle crossing Deep Creek, willfully, wantonly and maliciously blew its engine whistle for the purpose of frightening plaintiff's horses; that it did frighten them, causing them to run out of the mouth of the creek into the river, and to injure plaintiff.   He further charged that the defendant negligently blew the whistle at an unusual place, all of which was denied by the defendant.

Issues submitted to and responses of the jury:

1. Did defendants' engineer or fireman wantonly, wrongfully, and intentionally sound the whistle of the engine for the purpose of frightening the horses the plaintiff had in charge, and was the plaintiff injured thereby?   Yes.

2. Was the plaintiff injured by the negligence of the defendant?   Not answered.

3. Did the plaintiff, by negligence of his own, contribute to his injury?   Not answered.

4. What damage has plaintiff sustained?   $1,200.

The following is all the charge of the Court that appears in the record:

The Court charged as follows, upon the first issue:

To answer first issue "Yes," the burden is upon the plaintiff to prove by the greater weight of evidence that the engineer blew the whistle maliciously or wantonly, as I will presently explain, and thereby frightened and caused the horses to run into the river, and injured the paintiff.

If the whistle was blown for the purpose of frightening the horses, it must have been either a malicious or a wanton act. If with a desire to cause injury, it was malicious. If in a spirit of sport or indifference to the consequences, it was wanton. So far as the element of malice or wantonness is concerned, the question for you to determine is whether the whistle was blown for the purpose of frightening the horses.

To find that the blowing was malicious or wanton, you must find in the first place that the engineer had seen plaintiff and the horses, or that the fireman had seen them and informed the engineer. Even though you should find that the engineer had knowledge of the presence of plaintiff and the horses, the evidence would not warrant you in finding malice or wantonness if the whistle was blown at about the usual place and in a usual manner. Therefore, to answer first issue "Yes," you must find that it was blown at an unusual place or in an unusual and unnecessary manner. I do not mean to say if it was blown at an unusual place or in an unusual manner you ought to find that it was blown maliciously or wantonly, or, in other words, for the purpose of frightening the horses, but merely that unless you do find that the place or the manner was unusual, there would not be sufficient evidence upon which to answer the first issue "Yes." If you do find that the place or manner of the blowing was unusual, then that fact is to be considered by you in connection with all the evidence in determining whether the whistle was blown to frighten the horses; and it is a matter altogether

for you as to what, if any, weight shall be given to the fact. To sum up, if you are satisfied, by the great weight of the evidence, that the engineer had knowledge of the presence of plaintiff and the horses; that he blew the whistle at an unusual place or in an unusual manner; that his purpose was to frighten the horses, and that he did frighten and cause them to run into the river, and thereby injure the plaintiff, you will answer the issue "Yes." If you do not find these to be the facts you will answer it "No."

In lieu of defendants' twelfth request the Court charged if the whistle was blown directly over the road leading up the creek under the trestle, that fact is immaterial in so far as the being over the road is concerned. If the trestle was an unusual place at which to blow the whistle, that fact is a matter of evidence for you to consider, as I have explained; but the fact that the road leading up the creek ran under the trestle is immaterial.

The defendant asked the Court to give the following among other instructions:

5. The defendant had the right to run its trains over its track and to make the noises caused by the blowing of the whistle, which were necessarily incident to the operating of its trains; and if the jury find from the evidence that no more noise was made than was necessary, the answer to the first issue should be, "No."

Exception 1.—This instruction was modified as follows: "Unless the whistle was blown at an unusual place, for the purpose of frightening the horses, and thereby caused the injury;" and to such modification the defendant excepted.

The finding of the jury on the first issue eliminated all question of negligence either of the defendant or the plaintiff. This appears to have been admitted, as no part of the charge is sent up except that relating to the first issue. The

charge appears to us unexceptionable, and the special instructions asked by the defendants were properly refused, except in so far as given. It is well settled that contributory negligence, even if admitted by the plaintiff, is no defense to wilful or wanton injury. 3 Elliott on Railroads, secs. 1175, 1251, 1254, 1642; 2 Wood on Railroads, p. 1452; Beach on Cont. Neg., secs. 46, 50, 64, 65, 416. The large number of cases cited by the said authors fully sustain the principle.

This case arises out of the same facts as *Everett v. Receivers,* reported in 121 N. C., 519, and again upon a rehearing in 122 N. C., 1010. In that case, Everett recovered for the loss of the horses, while now the plaintiff brings this action to recover for injuries received by him at the same time and from the same causes. The evidence was much the same, but in the case at bar the jury have found that the injury was caused by the *wanton and intentional* act of the defendants' servant, and not his mere negligence. We nowhere find in the record any motion for nonsuit or that the defendants asked the Court to charge that there was not sufficient evidence to go to the jury as to the first issue, nor is there any exception to the failure to do so. As, however, the defendants' counsel devoted almost his entire argument to that point, we may say that it is not now before us, but if it were before us it would be without merit. The plaintiff testified that "when I got into the creek and the lead horse was drinking, the train ran on to the trestle. The fireman was on this side of the engine, standing looking down on me. He turned back into the engine. The whistle blew quick, and the horses sprang off with me. The whistle was all right at once, sorter like a gun firing." Joe Hatcher testified: "From where I was standing I could see *persons* in the engine cab. When I first saw them, *they* were looking in direction of carriage. When they got on road nearly under trestle and most opposite

me, whistle blew and *they* were then looking towards carriage. There was nothing to obstruct their view of carriage. It was a short, shrill whistle—very loud. Have been acquainted with character of blow for stations; it was a long blow; this was a different blow." Mrs. Everett testified: "Whistle was sharp and shrill. River was considerably swollen. When whistle blew, I saw *them* looking out of the engine window—seemed to be looking towards us. Think I saw two men in engine looking—one sitting, the other standing; am sure I saw one." Whit Sutton testified: "At the time of the accident I was just this side of the trestle; familiar with station blows; good deal of difference between the blow this time and the usual blow. *They* were sitting leaning out the cab window with *their* faces turned toward the team, as they were coming on over the trestle looking out the side window; no obstruction between them and the carriage." The testimony of the defendants tended to show that there were only two men in the cab at that time, the engineer and the fireman; and if there were more than one man looking towards the carriage, one of them must have been the engineer. Several witnesses testified that the whistle was sounded at an unusual place, and that the character of the blow was entirely different from the usual station blow. Taken in the light most favorable to the plaintiff, and upon such a motion it must have been so taken, there is certainly more than a scintilla of evidence. *Spruill v. Insurance Co.*, 120 N. C., 141; *Cox v. Railroad*, 123 N. C., 604. It is true, witnesses for the defendant testified to a different state of facts, but the jury evidently exercised their constitutional and immemorial privilege of believing just such testimony as they thought proper. With that right no one can interfere. The judgment is

Affirmed.