ROBAH McKINNEY, by His Next Friend, J. A. McKINNEY, v. F. F. PATTERSON and JOHN L. PATTERSON.

(Filed 7 November, 1917.)

1. **Judgments—Torts—Execution Against Person—Verdict.**

   Before execution against a tort feasor can issue it is necessary that the jury find affirmatively upon an issue as to whether the tortious act was done willfully—that is, voluntarily and of set purpose, or of free will, without yielding to reason.

2. **Issues—Willful Torts—Waiver.**

   In an action upon tort where one of the defendant's counsel asks that an issue be submitted as to the defendant's willfulness in committing it, and another of his counsel states that they do not desire the issue, this

being acquiesced in, and nothing further being said, such issue is not submitted, the right to have had it submitted is waived, and an objection may not be taken after argument and verdict.

**3. Appeal and Error — Judgments — Nonsuit — Court's Discretion—Intimation.**

 In an action alleged and tried against a principal and agent in tort, the court submitted issues to the jury directed to the liability of each defendant, and gave instructions upon the evidence relating to each; but when the jury had retired to consider their verdict, he said he would not permit a verdict to stand against the alleged principal, whereupon the plaintiff, as stated in the case on appeal, took a voluntary nonsuit as to this defendant and appealed: *Held*, the intimation of the judge was that he would set aside the verdict within his discretion, as against the weight of the evidence, and not upon a question of law, which is not appealable; and the nonsuit taken was premature, as the jury may have decided for appellant. The right of appeal upon intimation of the judge, followed by voluntary nonsuit. discussed by WALKER, J.

CIVIL ACTION, tried before *Stacy, J.,* and a jury, at May Term, 1917, of FORSYTH.

The plaintiff alleges that he was run over and seriously injured by an automobile driven by the defendant Francis F. Patterson and owned by his uncle and codefendant, John L. Patterson, and that his injuries were caused by the negligence of the defendant Francis F. Patterson in driving the automobile on Cherry Street, in the city of Winston, at an excessive and dangerous speed and in a reckless manner.

The court charged, in part, as follows: "The plaintiff has offered evidence, as I said a moment ago, tending to show that the defendant John L. Patterson knew that F. F. Patterson was using the car, or that he had reason to know that he had driven it on previous occasions, and that he had driven it on previous occasions for the defendant John L. Patterson, that is, in carrying out the business for which John L. Patterson had the car in Winston, then he did it with John L. Patterson's approval, and then he would be a *quasi* agent or a *quasi* servant for that purpose; and so plaintiff contends and argues to you that at the time in question the defendant Francis F. Patterson was the agent or servant of John L. Patterson and was driving the car of John L. Patterson, and that he was also driving it in furtherance of the purposes for which the car was left in Winston—that is, the plaintiff says it was left here for the use of the defendant John L. Patterson's wife and his mother, and for their family use, and that the defendant Francis F. Patterson was at that time practically a member of the family, and that he was using it for his pleasure and for the pleasure of the family. . . . The defendant John L. Patterson takes issue with the plaintiff on the question as to whether he is liable in this case, and has offered evidence tending to show that, notwithstanding the fact he was the owner of the car, he left

it here for the use of his wife and his mother, and not for the use of Francis F. Patterson; that he does know that Francis F. Patterson used the car probably on one or more occasions, but that the defendant F. F. Patterson had no permission or authority from him to use the car, and that at the time the injury occurred he was not using the car in the employment of the defendant John L. Patterson, nor was he about John L. Patterson's business or in the scope of any employment which John L. Patterson may have intended or given the defendant Francis F. Patterson. . . . If you find, gentlemen, as a fact from this evidence that F. F. Patterson was at the time engaged in running the car to Mrs. Patterson's home, after he had been out driving some of his friends, and that his errand on that day was simply for his own pleasure, and not for the purpose or in the employment of which the defendant left his car in Winston-Salem, then the defendant John L. Patterson is not liable in this case, and it would be your duty to answer the second issue 'No.' . . . The plaintiff says, gentlemen, that you ought to be satisfied and find that F. F. Patterson was virtually a member of Mrs. M. F. Patterson's family; that the defendant John L. Patterson knew the fact, that he left the car here for their use, and that included the use of F. F. Patterson. . . . It is a question of fact, gentlemen, under this evidence for you. If you find as a fact, from this evidence, that F. F. Patterson was an agent or servant of John L. Patterson, and at the time of the injury was in the furtherance of John L. Patterson's business or in the scope of his employment, it would be your duty to answer the second issue 'Yes.' If you do not so find, gentlemen, it would be your duty to answer it 'No.' ".

The jury returned the following verdict:

1. Was the plaintiff injured by the negligence of the defendant Francis F. Patterson, as alleged in the complaint? Answer: Yes.

2. Was the plaintiff injured by the negligence of the defendant John L. Patterson, as alleged in the complaint? Answer: No.

3. Did the plaintiff by his own negligence contribute to his injury, as alleged in the complaint? Answer: No.

4. What damages, if any, is the plaintiff entitled to recover? Answer: $3,500.

Plaintiff moved, upon the verdict, for a personal execution against the defendant Francis F. Patterson if the execution against his property is returned unsatisfied. This the court refused, and plaintiff excepted. In this connection the following statement appears in the record:

"While the court was determining the issues, one of the counsel for the plaintiff asked the court to submit a specific issue as to whether the injury to the plaintiff was done willfully or not by the defendant F. F.

Patterson. . Whereupon the other counsel for the plaintiff told the court that the plaintiff did not desire to have such an issue in which both counsel acquiesced; and thereupon the issues as suggested by the court and as appear in the record were submitted."

Judgment upon the verdict against Francis F. Patterson, and plaintiff appealed.

*W. J. Swaim, Benbow, Hall & Benbow, and Fred M. Parrish for plaintiff.*
*Lindsay Patterson for defendant.*

WALKER, J., after stating the case: The court properly denied the plaintiff's motion for an execution against the body of the defendant Francis F. Patterson. In order that such an execution may be issued, after the plaintiff has exhausted his remedy against the property of the defendant, a distinct and separate issue as to the essential fact upon which the right to the execution is based must be submitted to the jury, so as to have an affirmative finding as to the existence of the fact. We so held in *Ledford v. Emerson,* 143 N. C., 527. In that case, which involved the charge of fraud, not at all dissimilar in principle from our case, we said: "We adopt the view taken by the Court in *Davis v. Robinson,* 10 Calif., 411, where *Judge Field* (since a Justice of the United States Supreme Court) said: 'There is no doubt as to the correctness of the position that the execution must be warranted by the judgment. It rests upon and must follow the judgment; if it exceeds the judgment, it has no validity. To authorize, therefore, an arrest on execution, the fraud must be stated in the judgment, for the writ issues, in the language of the statute, in the 'enforcement' of the 'judgment.' Nor do we entertain any doubt that the question of fraud must be submitted to the jury, except so far as may be necessary to authorize the arrest pending the action. To justify execution against the person, which may be followed by imprisonment, an issue must be framed and be determined like issues of fact raised upon the pleadings. Fraud is an offense involving moral turpitude, and is followed by imprisonment not merely as a means of enforcing payment, but also as a punishment, and it would indeed be strange if on a mere question of indebtedness the right to a trial by jury should be held sacred and inviolate, and yet such trial be denied upon a question involving a possible loss of character and liberty. We should hesitate long before we held that this latter question could be tried upon affidavits where the accuser is also a witness, where the affiants are not present and no cross-examination of witnesses is allowed. We are aware of decisions in other States holding a different view, but we do not find sufficient reasons advanced in them

to induce us to deny what we cannot but regard as the clear right of the party accused. . . . The arrest upon affidavit is only intended to secure the presence of the defendant until final judgment; and in order to detain and imprison his person afterwards, the fraud must be alleged in the complaint, be passed upon by the jury, and be stated in the judgment. . . . By requiring the charges to be stated in the complaint the rights of the defendant will be fully guarded. He can then meet the charges and have a fair opportunity of defending himself by a trial before a jury."

Commenting upon that case, in which the opinion of the Court was written by a very able and learned judge, it was said by this Court: "There was no appropriate issue submitted in this case upon the alleged fraudulent conduct of the defendant, and we cannot hold that the general issue submitted embraced the matters relating to it. As soon as the money was paid by the purchaser of the options to the defendant, he immediately became indebted to the plaintiff for the amount of his share, and his subsequent conduct did not add one penny to that indebtedness, nor did it in law increase, in the slightest degree, the obligation to pay it. The debt has continued the same to this time, notwithstanding any of the alleged dishonest acts and practices of the defendant. So that when the jury found that he was indebted to the plaintiff 'by reason of the matters alleged in the complaint,' they referred, or at least must be presumed to have referred, of course, to those matters only which were necessary to constitute a cause of action for the recovery of the debt, and they were the transactions between the parties prior to the payment of the money to and the receipt of the money by the defendant for the plaintiff's use. This was fully sufficient to raise the implied promise to pay to the plaintiff his part of the proceeds, if there was not already an express one to do so. The allegations of fraud were therefore extrinsic to the cause of action, and it should not be supposed that the jury, under an issue so framed, passed upon the alleged fraud; and they not having made any special finding of fraud, a personal execution should not have issued upon the judgment," citing *Claflin v. Underwood,* 75 N. C., 485; *Preiss v. Cohen,* 117 N. C., 54; *Stewart v. Bryan,* 121 N. C., at p. 50.

It is true that this is not an action *ex contractu,* nor is there any allegation of fraud, and there could not well be; but the *Ledford case* furnishes a clear analogy to this one, and requires us to hold that where the gravamen of the charge is a willful wrong, which implies that the act done was voluntary and of set purpose, or where the mere will had free play, without yielding to reason, the matter thus alleged should be passed upon by the jury, as much so as if the tort complained of had been one of negligence or any other omission of duty not necessarily

involving an intention to commit it. · But the facts in this case are stronger for the defendant than were those in *Ledford v. Emerson, supra,* for the defendant there.  It appears that the plaintiff not only failed to ask for an issue as to the willful wrong, but expressly waived it by agreeing, through his counsel, as stated in the record, that he did not desire an issue "as to whether the injury to the plaintiff was done willfully" to be submitted to the jury; "and thereupon the issues, as suggested by the court, and as they appear in the record, were submitted." This was a clear waiver of the issue by the plaintiff, and it also throws light upon the first issue and its meaning, in connection with the words used therein, "as alleged in the complaint."  A similar question arose in *Ledford v. Emerson, supra,* as will appear by reference to the passages quoted above from the opinion in that case.  There we restricted the issue, which was actually submitted, to the debt, excluding the fraud; and here we confine it, as the judge confined it, by reason of the agreement of counsel, to the mere act of negligence stated in the complaint, which is sufficient to constitute a cause of action, excluding any willfulness on the part of the defendant, Francis F. Patterson.  If we pursued that course in *Ledford v. Emerson,* there is every reason for doing so here, as plaintiff agreed that it should be done.  The general rule is, that a party cannot object after the time for submitting issues has passed, and certainly not after verdict, that an issue, for which he made no request, was not submitted by the court.  *Smith v. Newberry,* 140 N. C., 385; *Rich v· Morisey,* 149 N. C., 37.  Our case is well within that principle, as there was not only no application for such an issue, but, on the contrary, a direct request that it be not submitted.  There was no error, therefore, in refusing to issue the execution for which the plaintiff asked, upon a finding of negligence only.  *Oakley v. Lasater,* 172 N. C., 96.

As to the liability of John L. Patterson, we doubt if the plaintiff is entitled to have the judgment reviewed upon any question affecting this defendant, for the court finds as a fact, and so states in the judgment, that plaintiff took a voluntary nonsuit as to him.  However, we will inquire how the case stands in respect to the nonsuit.  The judge, after the jury had returned from the court-room, stated that if there was a verdict against John L. Patterson he would set it aside; and the plaintiff thereupon took a nonsuit.  The judge's remark, made when the jurors were not in the court-room, evidently meant that such a verdict would not violate any principle of law or instruction of the court, but would be against the weight of the evidence.  The judge could not have intended anything else, because he had charged fully as to the law, and submitted the case to the jury.  If he had thought that there was no evidence of any negligence on the part of this defendant, he could not have given

the instructions contained in his charge, and, besides, he would have recalled the jury and directed a verdict, or himself ordered a nonsuit as to John L. Patterson. It would be vain to leave a case to the jury if, as matter of law, the plaintiff was not entitled to a verdict. This being so, the plaintiff could not take a nonsuit and review his decision, as the setting aside of a verdict for such a reason is not reviewable in this Court, whether a verdict should be set aside as being against the weight of the evidence being a matter which is controlled by the sound discretion of the trial judge.

The judge, as will be seen by reference to the facts stated above, charged fully upon the law, and especially did he instruct the jury that the issue as to the liability of John L. Patterson should be answered against the plaintiff, unless the jury found that Francis F. Patterson was the agent or authorized chauffeur of John L. Patterson at the time of the injury, and, as such, was acting within the scope of his employment, or was about his master's business. When the jury asked for further instructions, and the court repeated that Francis F. Patterson must at the time of the injury have been "about his master's business," the instruction was not decisive of the case against the plaintiff, so that he could take a nonsuit and review the ruling here, for the jury might have returned a verdict in his favor. His case would not have been hopeless under such a charge, for the judge did not cut all the ground from under him. We said, in *Hayes v. R. R.,* 140 N. C., 131: "In order to avoid appeals based upon trivial interlocutory decisions, the right thus to proceed (viz., to take a nonsuit and appeal) has been said to apply ordinarily only to cases where the ruling of the court strikes at the root of the case and precludes a recovery by the plaintiff. The plaintiff's right to take the course he did was challenged in this Court because the ruling did not cover the whole case, but left him ground upon which a recovery could be had." And in *Davis v. Ely,* 100 N. C., 286, *Chief Justice Smith* said, referring to the practice of thus taking a nonsuit in deference to an adverse ruling: "It has been repeatedly held that appeals, fragmentary in their character, could not be allowed when the subject-matter could be afterwards considered and any erroneous ruling corrected as well, without detriment to the appellant." And again, by the same judge, in *Tiddy v. Harris,* 101 N. C., 591: "The practice has long prevailed that when the proofs are all in and the judge intimates an opinion that under the old practice the plaintiff cannot recover, or, under the new, fails to establish the issues necessary to his having judgment, he may suffer a nonsuit, and by appeal have the correctness of the ruling reviewed," citing *Crawley v· Woodfin,* 78 N. C., 4, and *Gregory v. Forbes,* 94 N. C., 221. The same rule was applied in *Midgett v. Mfg. Co.,* 140 N. C., 361; *Merrick v. Bedford,* 141 N. C., 504;

*Hoss v. Palmer,* 150 N. C., 17, and more recently in *Teeter v. Mfg. Co.,* 151 N. C., 602; *Blount v· Blount,* 158 N. C., 312; *Gilbert v. Shingle Co.,* 167 N. C., 286. We see that the rule is well established, and it is perhaps a useful one in practice, but the adverse intimation should be of such a kind that it is fatal to the case of the party against whom it is made. It must be directed against the right to recover at all, leaving no chance, in law, for him to succeed before the jury. *Robinson v. Daughtry,* 171 N. C., 195, is in this respect similar to this case, as plaintiff's right to recover was not destroyed by the intimation of the judge, and *Justice Allen* suggested that an appeal did not lie. It is well to review the question, as we have done, so as to restrict the practice to its proper limits, and to clear up any doubt in regard to it. Here the plaintiff could have excepted to the instructions and reserved the point, after taking his chance with the jury upon the facts. His Honor thought he had such a chance to win, as he submitted the question to the jury.

The nonsuit was taken prematurely, and it is unnecessary for us to decide whether, if the plaintiff had gone on with the trial to a verdict, he could, in law, have recovered against John L. Patterson, under *Linville v. Nissen,* 162 N. C., 95, and the authorities cited therein.

We have carefully examined the record, and find no error in the rulings of the court in the respects indicated in this opinion.

No error.