KENNETH W. BREWER, ADMINISTRATOR OF THE ESTATE OF FARRELL L. BREWER, PLAINTIFF v. WILLIAM P. HARRIS, ADMINISTRATOR OF THE ESTATE OF GARY RUDISILL, DEFENDANT

No. 102

(Filed 30 July 1971)

**1. Rules of Civil Procedure § 85— applicability of new rules**

The new Rules of Civil Procedure apply to actions pending on 1 January 1970 as well as to actions and proceedings commenced on and after that date.

**2. Automobiles § 43; Negligence § 7— wilful and wanton negligence — sufficiency of pleadings**

In this action for the wrongful death of a passenger in an automobile which failed to negotiate a curve, plaintiff's complaint was sufficient to raise the issue of wilful and wanton negligence on the part of the driver of the automobile. G.S. 1A-1, Rule 84, Form 4.

**3. Negligence § 7— wilful and wanton negligence**

Ordinarily, contributory negligence on the part of a plaintiff does not bar recovery when the wilful and wanton conduct of a defendant is a proximate cause of plaintiff's injuries.

**4. Automobiles §§ 91, 94; Negligence § 7— wilful and wanton negligence — sufficiency of evidence**

In an action for the wrongful death of a passenger in an automobile which failed to negotiate a curve, plaintiff's evidence was sufficient to require submission of an issue as to the wilful and wanton conduct of the driver of the automobile where it tended to show that, despite warnings by plaintiff's intestate to slow down for the approaching curve, the driver failed to slow down and entered the curve at a speed over 100 mph, and that the driver had a blood alcohol content of .31%.

**5. Automobiles § 94; Negligence § 7— wilful and wanton contributory negligence — jury verdict**

There is no merit in the contention by defendant in this wrongful death action that, based on the court's instructions, the jury found plaintiff's intestate guilty of wilful and wanton contributory negligence.

APPEAL by defendant pursuant to G.S. 7A-30(2) from decision of the North Carolina Court of Appeals (10 N.C. App. 515, 179 S.E. 2d 160), holding there was error in the trial before *Collier, J.*, at 18 May 1970 Session of GUILFORD Superior Court (High Point Division).

This is an appeal resulting from trial of a wrongful death action and an action to recover damages for personal injuries

arising out of an automobile collision which occurred on 15 September 1968 in the city limits of High Point, North Carolina. The collision involved a 1967 Pontiac operated by James Miller, and a 1968 Corvette owned and operated by Gary Gene Rudisill (Rudisill). Farrell L. Brewer (Brewer) and Danny Carroll (Carroll) were passengers in the Corvette automobile at the time of the collision. Both Brewer and Rudisill died as a result of injuries sustained in the accident, and Carroll suffered personal injuries. Brewer's administrator instituted action for wrongful death, and Carroll instituted action to recover damages for personal injuries against Rudisill's administrator. The actions were consolidated for trial, and at the close of the evidence plaintiffs, pursuant to G.S. 1A-1, Rule 49(c), demanded that the following issue be submitted:

Issue Number Three: "If so, was the death of Farrell L. Brewer caused by wilful or wanton conduct on the part of Gary Gene Rudisill, as alleged in the Complaint?"

The trial judge denied plaintiffs' tender of issue, and issues were submitted to and answered by the jury as follows:

1. Was Farrell L. Brewer killed by the negligence of Gary Gene Rudisill, as alleged in the Complaint?

Answer: Yes.

2. If so, did Farrell L. Brewer contribute by his own negligence to his death, as alleged in the Answer?

Answer: Yes.

3. What amount, if any, is the plaintiff entitled to recover for the wrongful death of Farrell L. Brewer?

Answer: ————.

Prior to the submission of the issues it was stipulated by counsel that if the jury should find from the evidence and by its greater weight that Gary Gene Rudisill was the driver of the car on this occasion, the jury might answer the first issue "Yes."

Plaintiff Brewer appealed from the judgment entered in accordance with the jury verdict, and plaintiff Carroll aban-

doned and failed to perfect his appeal. It was stipulated between plaintiff Brewer and defendant that there should be omitted from the agreed record and case on appeal all reference to the case in which Danny Carroll was plaintiff.

*John Haworth, Haworth, Riggs, Kuhn and Haworth for plaintiff appellee.*

*Perry C. Henson and Daniel W. Donahue for defendant appellant.*

BRANCH, Justice.

Defendant appellant contends that the Court of Appeals erred in holding that the complaint was sufficient to raise an issue as to whether the conduct of defendant's intestate was wilful and wanton.

Plaintiff by his complaint, *inter alia,* alleged:

VII. Said collision occurred in the following manner and not otherwise:

Gary Gene Rudisill was driving said 1968 Chevrolet Corvette automobile in a northerly direction along South Main Street. Before stopping at the intersection of South Main Street and Fairfield Road, where the electrical traffic signal was then displaying a red light for traffic on South Main Street, Gary Gene Rudisill had been driving at a lawful and reasonable rate of speed and in a normal, careful and prudent manner. When the traffic signal at the intersection of South Main Street and Fairfield Road turned green for traffic on South Main Street, Gary Gene Rudisill resumed traveling in a northerly direction along South Main Street but suddenly accelerated the speed of said automobile and began traveling at a highly dangerous and unsafe rate of speed and in an extremely careless and reckless manner. *Despite the protests of the occupants of said automobile, including the protests of Farrell L. Brewer, Gary Gene Rudisill, continued to drive at an extremely high and dangerous rate of speed* and lost control of said automobile as it entered the curve at the intersection of Fraley Road and South Main Street. Said automobile went off the west side of the road, struck two

Brewer v. Harris

utility poles and struck head-on a 1967 Pontiac automobile being operated by James Daniel Miller. Said 1968 Chevrolet Corvette automobile was totally demolished and its occupants, including Farrell L. Brewer, were thrown from the vehicle. Farrell L. Brewer thereby sustained severe and critical injuries from which he died at about two o'clock a.m. on September 15, 1968.

VIII. The injuries sustained by Farrell L. Brewer and his death were solely and proximately caused by the negligence of Gary Gene Rudisill. Specifically Gary Gene Rudisill was negligent in the following respects:

(a) *He drove said 1968 Chevrolet Corvette automobile upon a public highway carelessly and heedlessly, in willful and wanton disregard of the rights and safety of Farrell L. Brewer and others,* without due caution and circumspection, and at a speed and in such a manner as to endanger the person and property of Farrell L. Brewer and others, thereby violating the provisions of G.S. 20-140.

(b) He drove said 1968 Chevrolet Corvette automobile at a speed greater than was reasonable and prudent under conditions then existing, thereby violating the provisions of G.S. 20-141(a).

(c) He drove said 1968 Chevrolet Corvette automobile at a speed greatly in excess of the maximum posted speed limit of thirty-five (35) miles per hour then and there prevailing.

(d) He failed to decrease the speed of said 1968 Chevrolet Corvette automobile where special hazard existed by reason of highway and traffic conditions so as to avoid said collision in accordance with his duty to exercise due care, thereby violating the provisions of G.S. 20-141(c).

(e) He failed to keep and maintain said 1968 Chevrolet Corvette automobile under careful and proper control in violation of his legal duty to exercise due care.

(f) He failed to drive said 1968 Chevrolet Corvette automobile upon the right half of the roadway, thereby violating the provisions of 20-146(a).

(g) While meeting a vehicle proceeding in the opposite direction he failed to pass said vehicle to the right and give to the other vehicle at least one-half of the main traveled portion of the roadway as nearly as possible, thereby violating the provisions of G.S. 20-148. (Emphasis added.)

[1] The effective date of the Rules of Civil Procedure contained in Chapter 1A of the General Statutes was 1 Jauuary 1970, and the Rules apply to actions and proceedings pending on that date as well as to actions and proceedings commenced on and after that date. Session Laws of 1969, Ch. 803, § 10; *Sutton v. Duke,* 277 N.C. 94, 176 S.E. 2d 161.

This case was tried on 18 May 1970 and is therefore governed by the "New Rules." G.S. 1A-1, Rule 8 provides:

(a) Claims for relief.—A pleading which sets forth a claim for relief, whether an original claim, counterclaim, crossclaim, or third-party claim, shall contain

(1) A short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief, . . . "

In *Sutton v. Duke, supra,* this Court considered the effect of this rule and, speaking through Sharp, J., stated:

" . . . [S]ince the federal and, presumably, the New York rules are the source of NCRCP we will look to the decisions of those jurisdictions for enlightenment and guidance as we develop 'the philosophy of the new rules.'

"The attempts of the federal court to state the scope and philosophy of their rules was summarized by Mister Justice Black in *Conley v. Gibson,* 355 U.S. 41, 2 L. Ed. 2d 80, 78 S.Ct. 99, the case most frequently cited and quoted on the point we consider here. Speaking for a unanimous Court, he said: ' . . . [T]he Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a "short and plain statement of the claim" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

The illustrative forms appended to the Rules plainly demonstrate this. Such simplified "notice pleading" is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues.' *Id.* at 47-48. Thus, under the federal rules 'a case consists not in the pleadings, but in the evidence, for which the pleadings furnish the basis.' *DeLoach v. Crowley, Inc.,* 128 F. 2d 378 (5th Cir., 1941).

"Under the 'notice theory of pleading' a statement of claim is adequate if it gives sufficient notice of the claim asserted 'to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata,* and to show the type of case brought . . . . ' . . . "

We find further aid in interpreting these Rules by reference to the illustrative forms approved by the legislature in G.S. 1A-1, Rule 84, where we find the following:

"The following forms are sufficient under these rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate:

. . . .

(4) Complaint for Negligence. (Where plaintiff is unable to determine definitely whether one or the other of two persons is responsible or whether both are responsible and where his evidence may justify a finding of wilfulness or of recklessness or of negligence.)

1. On _____ 19_____, at _____, defendant X or defendant Y, or both defendants X and Y, wilfully or recklessly or negligently drove or caused to be driven a motor vehicle against plaintiff who was then crossing said street.

2. Defendant X or defendant Y, or both defendants X and Y were negligent in that:

(a) Either defendant or both defendants drove at an excessive speed.

(b) Either defendant or both defendants drove through a red light.

(c) Either defendant or both defendants failed to yield the right-of-way to plaintiff in a marked crosswalk.

3. As a result plaintiff was thrown down and had his leg broken and was otherwise injured, was prevented from transacting his business, suffered great pain of body and mind, and incurred expenses for medical attention and hospitalization [in the sum of one thousand dollars] (or) [in an amount not yet determined].

Wherefore, plaintiff demands judgment against X or against Y or against both in the sum of ........... dollars and costs."

This form approves a short statement of the basic occurrences and the use of the words "reckless" and "wilful" to describe the character of a defendant's conduct as sufficient notice of the claim "to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought. . . . "

Certainly the detailed factual allegations and the description of the character of defendant's intestate's alleged conduct in instant case meets the requirement of "notice theory of pleading." Our conclusion that this complaint gave defendant fair notice of the nature of plaintiff's claim and the grounds upon which it rested draws strength from the fact that defendant's answer alleges "wilful and wanton" conduct on the part of Brewer in pleading contributory negligence.

[2] We hold that plaintiff's complaint was sufficient to raise the issue of defendant's intestate's wilful and wanton conduct.

Appellant contends that plaintiff failed to allege wilful and wanton conduct within the provisions of N.C.G.S. 1A-1, Rule 9(b) stating that conditions of mind *may* be generally averred. Since we hold that the complaint meets the requirements of G.S. 1A-1, Rule 84, Form 4, we find no merit in this contention.

We next consider appellant's contention that the evidence was not sufficient to require submission of an issue as to the wilful and wanton conduct of defendant's intestate.

The evidence pertinent to decision of this question may be summarized as follows:

Brewer and Carroll had been acquainted for several years, including association in the military service in Vietnam. Carroll had been separated from the service, and Brewer was on a weekend leave from his military station at Fort Benning, Georgia. On the night of 15 September 1968 they met at the Guilford Dairy in High Point at about 9:30 o'clock, and thereafter went for a ride in Carroll's automobile. During the evening both Carroll and Brewer had two drinks of Bourbon whiskey, and they together consumed about one-half pint. Brewer and Carroll returned to the Dairy around 11:00 o'clock p.m., and there met Rudisill. Sometime later they left in Rudisill's Corvette, with Brewer driving, Rudisill sitting on the console between the two seats, and Carroll sitting in the passenger seat. Brewer drove the automobile in a southerly direction on South Main Street through High Point to a service station in Archdale, North Carolina. There they stopped and talked a few minutes. On their return trip Rudisill drove, Carroll sat in the passenger seat, and Brewer sat on the console.

The witness Carroll testified:

"When we left the service station we traveled back down South Main Street. Gary Rudisill drove the car from the point where we had stopped below Archdale all the way back to where the wreck had happened. Describing the manner in which Gary Rudisill was operating the automobile, I'd say he was driving 35 and he got to about a 45 limit and he was running between 40 and 45. Up to the Fairfield Road intersection he was driving at all times within the speed limit and on his right side of the road. Until we arrived at the Fairfield Road intersection I did not notice anything abnormal about the way Gary Rudisill was driving. He was driving very safely then.

"When we arrived at the intersection of South Main Street and Fairfield Road there was a stop light at the intersection that was then red. Gary Rudisill pulled up to the light and stopped. We stayed stopped there, I guess 10 or 15 seconds and then the light changed to green. Describing the operation of the car after the light changed to green, we started rolling a little bit and then he just kicked it. By 'kicking it' I mean that he mashed the gas all the way to the floorboard. We just took off, just like that (demonstrating).

"I would say that the rate of speed we attained as we proceeded on toward High Point after leaving the Fairfield Road was well over a hundred. . . .

" . . . Farrell told him, said, 'Slow down,' said 'You are not going to make the curve,' and he told him that possibly two or three times before we got the curve.

" . . . The left hand side of the car struck the telephone pole. I do not know what happened after that. . . . "

Carroll also testified that he saw Rudisill drinking from a plastic glass at the Guilford Dairy, and that Rudisill was "talking to different people . . . just like everybody else around there."

C. W. Pike of the High Point Police Department, testifying for defendant, stated that he arrived at the scene of the accident about 1:35 a.m., and that he observed pressure marks beginning in the northbound lane of South Main Street. The marks continued 268 feet to a telephone pole, which apparently was severed by the impact of the Corvette automobile. The marks continued 124 feet to a second telephone pole, which was also damaged, and from there continued 70 feet to the rear of the Corvette. The Corvette's last impact was a head-on collision with the Pontiac which was traveling in a southerly direction in the southbound lane of Main Street.

Defendant also presented evidence, over plaintiffs' objection, that Rudisill had a .31% alcohol content in his blood and that Brewer had an alcohol content of .11%. Dr. Thomas Terrell testified that if the jury should find that Rudisill had .31% alcohol content in his blood, he was "highly intoxicated," and if the jury should find that Brewer had .11% alcohol content in his blood, that he was "mildly intoxicated."

The term "wilful and wanton conduct" was defined by this Court in the case of *Foster v. Hyman,* 197 N.C. 189, 148 S.E. 36. There the Court stated:

"An act is done wilfully when it is done purposely and deliberately in violation of law (*S. v. Whitner,* 93 N.C. 509; *S. v. Lumber Co.,* 153 N.C. 610 [69 S.E. 58]), or when it is done knowingly and of set purpose, or when the mere will has free play, without yielding to reason.

*McKinney v. Patterson, supra.* [174 N.C. 483, 93 S.E. 967]. 'The true conception of wilful negligence involves a deliberate purpose not to discharge some duty necessary to the safety of the person or property of another, which duty the person owing it has assumed by contract, or which is imposed on the person by operation of law.' Thompson on Negligence (2 ed.), sec. 20, quoted in *Bailey v. R. R.,* 149 N.C. 169 [62 S.E. 912].

"An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. *Everett v. Receivers,* 121 N.C. 519, [27 S.E. 991] ; *Bailey v. R. R., supra.* A breach of duty may be wanton and wilful while the act is yet negligent; the idea of negligence is eliminated only when the injury or damage is intentional. *Ballew v. R. R.,* 186 N.C. 704, 706 [120 S.E. 334, 335]."

Accord: *Givens v. Sellars,* 273 N.C. 44, 159 S.E. 2d 530; *Hinson v. Dawson,* 244 N.C. 23, 92 S.E. 2d 393; *Blevins v. France,* 244 N.C. 334, 93 S.E. 2d 549.

[3]   Ordinarily, contributory negligence on the part of a plaintiff does not bar recovery when the wilful and wanton conduct of a defendant is a proximate cause of plaintiff's injuries. *Pearce v. Barham,* 271 N.C. 285, 156 S.E. 2d 290; *Blevins v. France, supra; Brendle v. R. R.,* 125 N.C. 474, 34 S.E. 634.

Both plaintiff and defendant cite the case of *Pearce v. Barham, supra.* We think that this question is controlled by the decision in Pearce. In that case the Court, speaking through Bobbitt, J., now C.J., *inter alia* stated:

"There was evidence which, when considered in the light most favorable to plaintiff, tends to show: On February 19, 1964, near midnight, Calvin W. Barham (Calvin), was driving his Ford car in a northeasterly direction along Rural Paved Road No. 2224. Plaintiff, seated to Calvin's right, and Dolly Barham (Dolly), seated to plaintiff's right, were passengers. As he approached Fowler's Crossroads, the intersection of No. 2224 with Rural Paved Road No. 2308, Calvin was driving in a drizzling rain, with slick tires, upgrade, at a speed of ninety miles an hour 'or better' moving back and forth across the road; and, although confronted by the stop sign at that intersection, failed to

stop or slow down, crossed the intersection at such speed and lost control. As a result, his car left the road and overturned in a field some 288 feet from where it left the road, killing the driver and injuring the passengers. There was evidence sufficient to support a finding that Calvin's conduct was both wilful and wanton."

[4]   Perhaps the facts in instant case make out an even stronger case of wilful and wanton conduct than is shown in *Pearce,* since here we have evidence of protest and warning by plaintiff's intestate concerning defendant's intestate. In any event, the evidence here presented was ample to allow the jury to find that his conduct was both wilful and wanton.

The trial court erred by not submitting the issue requested by plaintiff and the error is prejudicial, since the plaintiff's right to recover was barred upon a finding of contributory negligence.

Finally, defendant argues that, based on the court's instructions, the jury found the plaintiff's intestate guilty of wilful and wanton contributory negligence.

It is true that the trial judge referred to defendant's *allegations* of Brewer's wilful and wanton conduct and to defendant's *contention* that Brewer displayed wilful and wanton disregard for his own safety. However, in his final mandate to the jury on the issue of contributory negligence the trial judge stated:

"... [A]nd that they at no time protested regarding the manner in which the car was being operated, which failure to exercise due care for their own safety concurred and cooperated with the negligence, if any, of the defendant; and I charge you that if you so find such to be the case, and if you further find that in such conduct they, or either of them, voluntarily placed themselves in such peril known to them, or either of them, or both of them, and voluntarily continued therein, and thereby failed to exercise ordinary care for their own safety, the same being that degree of care that a reasonably prudent person would exercise under the same or similar circumstances, in either of these cases, then it would be your duty to find on the Second Issue, 'Yes,' in favor of the defendant."

Further examination of the charge reveals that the trial judge undertook to define "due care" but omitted any definition of "wilful and wanton conduct"; neither did he apply "wilful and wanton conduct" to the facts of the case so that the jury would have been able to determine what act or omission on the part of plaintiff's intestate could be characterized as wilful and wanton. Thus, consistent with his refusal to submit an issue as to Rudisill's wilful and wanton conduct, the trial judge based his charge on the second issue upon the theory of ordinary contributory negligence.

[5] We do not agree with defendant's contention that, based on the court's instructions, the jury found plaintiff's intestate guilty of wilful and wanton contributory negligence.

We note, in passing, that this appeal does not require decision as to whether plaintiff could recover if both Brewer and Rudisill had been guilty of wilful and wanton conduct which was a proximate cause of Brewer's injury.

The Court of Appeals properly granted a new trial.

Affirmed.