LILLIAN S. MORGAN v. THE GREAT ATLANTIC AND PACIFIC TEA COMPANY.

(Filed 14 January, 1966.)

**1. Trial § 21—**

On motion to nonsuit, defendant's evidence which is favorable to plaintiff or tends to clarify or explain plaintiff's evidence is properly considered, but defendant's evidence which is inconsistent with plaintiff's evidence or tends to establish a different state of facts must be ignored.

**2. Negligence § 37a—**

A customer entering a supermarket during business hours to make purchases is an invitee.

**3. Negligence § 37b—**

The proprietor is not an insurer of the safety of its customers and may be held liable for injury to a customer in a fall only upon a showing of negligence, there being no inference of negligence from the mere fact of a fall and the doctrine of *res ipsa loquitur* not being applicable.

**4. Same—**

The proprietor of a supermarket is under legal duty to exercise ordinary care to keep its aisles and passageways where customers are expected to go in a reasonably safe condition and to give warning of hidden dangers or unsafe conditions of which it has knowledge or of which, by the exercise of reasonable supervision and inspection, it should be cognizant.

**5. Negligence § 37f— Evidence held for jury in this action by patron to recover for fall on floor.**

Evidence tending to show that the proprietor of a supermarket maintained a weighing scale some 20 to 30 feet from the bins for fresh vegetables, that customers habitually carried the vegetables from the bins to the weighing scale for weighing and, as they walked, part of the leafy vegetables fell onto the floor in the aisle, that plaintiff fell in the aisle when her foot slipped on a piece of leafy vegetable, and that debris of vegetables, onion husks, lint and dirt covered an area of some three feet square in the aisle, that the market served numerous customers, and that the floor had not been swept for 45 minutes prior to the injury, *held* sufficient to be submitted to the jury on the issue of negligence.

**6. Negligence § 37g—**

Evidence that plaintiff was looking at the floor in the direction she was walking, that she could not see the floor "real good," that the tiles of the floor were gray and green, and that the vegetable leafs thereon were green, *held* not to disclose contributory negligence as a matter of law on her part in her action to recover for a fall resulting when she stepped upon a piece of leafy vegetable on the floor.

**7. Appeal and Error § 38—**

Assignments of error not brought forward in the brief are deemed abandoned. Rule of Practice in the Supreme Court No. 28.

HIGGINS, J., dissents.

APPEAL by defendant from *Hobgood, J.,* 29 March 1965 Civil Session of CUMBERLAND.

Civil action by plaintiff, a business visitor, to recover damages for personal injuries allegedly caused by a fall in defendant's store. Plaintiff alleges in her complaint that on 27 July 1962 she entered defendant's store to purchase food therein, and was injured when she stepped on a piece of leafy vegetable in the aisle of defendant's supermarket in front of its frozen food and produce counters and fell, and that her injuries were proximately caused by defendant's negligence in that it installed its produce and vegetable counters in such a position that it was necessary for customers to gather up and carry by "hand-full" the vegetables or produce for a considerable distance to the scales for weighing it, so that it could be priced and sacked, thereby making it likely that produce and vegetables would fall upon the floor and create a dangerous condition, and that in fact particles or portions of such articles frequently dropped upon the aisle, that it allowed a slippery and dangerous substance in the form of a vegetable leaf to remain in the aisle for customers in front of the produce, vegetables and frozen foods counters, when it had either actual or constructive notice of such fact, and no warning of the dangerous condition was given her.

Defendant in its answer denies that it was negligent, and conditionally pleads contributory negligence of plaintiff as a bar to any recovery by her.

Evidence was offered by plaintiff and by defendant. The jury found by its verdict that plaintiff was injured by the negligence of defendant as alleged in the complaint, that plaintiff did not by her negligence contribute to her injuries, and that she was entitled to recover $10,000 from defendant.

From judgment on the verdict, defendant appeals to the Supreme Court.

*Butler, High & Baer by Sneed High for defendant appellant.*

*James R. Nance and Rudolph G. Singleton, Jr., for plaintiff appellee.*

PARKER, J. Defendant has brought forward and discussed in its brief only two assignments of error: first, the denial of its motion for judgment of compulsory nonsuit made at the close of plaintiff's evidence, and second, the denial of a similar motion made at the close of all the evidence.

It is well-established law in this jurisdiction that in ruling upon a motion for a compulsory judgment of nonsuit, after all the evidence of plaintiff and defendant is in, the court may consider so

much of defendant's evidence as is favorable to plaintiff or tends to clarify or explain evidence offered by plaintiff not inconsistent therewith, but it must ignore that which tends to establish another and different state of facts or which tends to contradict or impeach the testimony presented by plaintiff. Otherwise, consideration would not be in the light most favorable to plaintiff. *Watters v. Parrish*, 252 N.C. 787, 115 S.E. 2d 1.

Plaintiff's evidence taken as true and considered in the light most favorable to her, and defendant's evidence favorable to her, show the following facts, which we summarize except when quoted:

On 27 July 1962 defendant operated a large self-service supermarket in the city of Fayetteville. The supermarket had four shopping aisles running from the front of the store toward the rear between tall display merchandise shelves, and one aisle at the rear horizontal to the other aisles where the meat department is. It had eight check-out counters in the front and three in the back. The westernmost aisle of the four aisles of the supermarket was about 75 to 80 feet long and 8 to 10 feet wide. A large part of the west wall of the store was occupied by a deepfreeze display for frozen foods, and an open slanted counter display for potatoes and an open slanted counter display for produce, including leafy vegetables. In going down the westernmost aisle from the front of the store there is first the counter display for produce, including vegetables, then the counter display for potatoes, and then towards the rear the frozen foods display. In this aisle are the weighing scales situate at the end of the produce counter. John Butler, a witness for defendant, operates these scales, weighing items brought to him and putting them in bags. Among his duties are to arrange the displays in his aisle in a neat manner, and to keep the floor clean.

Plaintiff, aged 52, entered the supermarket with her daughter, Mrs. Blanche Davis, about 8 p.m. on 27 July 1962 for the purpose of buying groceries and other produce. At that time there were about 35 or 40 people in the store. She went first to the shirt counter, looked at some shirts, and then went to the produce bin situate beside the westernmost aisle of the supermarket. Her daughter had selected a grocery cart and had moved on down the westernmost aisle of the store some 10 or 12 feet south of the weighing scales. Her daughter had placed red Irish potatoes in the cart. She took the red potatoes from the cart, carried them back, and exchanged them for white potatoes. The white potatoes which she had selected were some 12 or 15 or 20 feet from the weighing scales. The cabbages were some 25 or 30 feet from the weighing scales. After she selected the potatoes, she carried them to the weighing scales where Mr. Butler was. She had been trading in this store for 6 or 7 years,

knew Mr. Butler, and had a conversation with him about her pref-
erence for small white potatoes. Mr. Butler weighed the potatoes
and she started with them to where her daughter was with the cart.
As she moved from the weighing scales to the cart, her right foot
started slipping and she fell to the floor with her left knee up under
her. She testified:

". . . her daughter got her up; that when she got up she saw
an onion husk and lint, dirt, vegetables, pieces of vegetable
leaves, all around; that she saw a vegetable leaf under her foot,
which leaf had slipped; that it was about half as big as her
hand; that Mr. Butler picked up the vegetable leaf and took it
with him; that she saw it on the floor and saw it as he picked
it up; that the vegetable leaf was old, wilted, and dirty; that it
was mashed, all bruised up; that there were skid marks on the
floor; that the marks were damp looking and they extended
over an area of 6 to 8 inches; she slipped on the vegetable
leaf and Mr. Butler took it away. . . .

". . . that she observed pieces of vegetable leaves, onion
husks, and lint on her hands; that she brushed off her hands;
that she observed pieces of vegetable leaves and onion husks
and dust and lint; that the pieces of onion husk and pieces of
vegetables covered an area of about 3 or 4 feet square, probably;
that she had a good bit of debris and trash on her hands; that
her hands were covered, the palms were covered; that the on-
ion husks were 9 or 12 feet from the weighing scales and 10 or
12 feet from the onion bins; that the vegetables which she saw
on the floor were anywhere from 24 to 30 to 50 feet from the
bins . . . that she had on low heeled shoes, wedge type and
that they were the same wedge type heels that were being worn
generally by people in Fayetteville. . . .

\* \* \*

". . . she looked around while she was sitting on the floor;
she saw lint, the lint was gray looking, and she saw leafy veg-
etables; she did not know whether they were cabbage, and
could not tell exactly what kind of vegetables they were, but
they were particles of vegetables, particles anywhere from an
inch square to two or three inches square, and they were spread
over an area of some three feet.

". . . that the debris of leafy vegetable matter were both
on the gray and the grayish-white part of the floor; the color
of the tiles on the floor were gray and green; that it was a kind
of dark gray, medium gray; that part of the onion husks were

on the gray part of the floor, and that part of the onion husks were on the green part of the floor; that the onion husks were yellow or brown, not spring onions; she saw leafy vegetables while she was on the floor; she did not pick it up but examined it closely; that it was green and yellow; the leaf she fell on was a green leaf, a green wilted leaf, 'dirty, greenish, withered leaf is what I slipped on'; that it was about two-thirds as big as her hand and was three or four inches square; she did not know what kind of leaf it was; she did not know whether there were collards or spring onions or rutabagas in the produce bins; she could not see the stuff on the floor that she had described until after Mr. Butler came up; until that time she had seen nothing on the floor; she was looking at the floor in the direction which she was traveling, she was looking at the grocery cart and glancing across toward the frozen vegetables; she was looking where she was walking; she was looking where she was going.

"Q.  Well, the matter which you have described as being on the floor was right in the path that you were taking toward the vegetable cart, was it not?
"A.  Yes sir.

"Q.  And the store at that point is and was well lighted, is it not?
"A.  Not as well as it is now.

"Q.  Could you see the floor?
"A.  No, I couldn't see it good. The way the light shone there, you could not see the floor real good. . . .

＊        ＊        ＊

"She was looking where she was going; her daughter was right across the aisle to the left when she fell; she was only three or four steps away; she came to her while she was on the floor and assisted her to her feet. . . ."

John Butler, a witness for defendant who operates the weighing scales in the westernmost aisle of the store, testified on cross-examination:

". . . on Friday afternoons, up until 7:00 o'clock, he has three on his aisles besides himself; after 7:00 there is one more besides himself; part-time there was someone in the aisle with him; the second man was in the back room straightening up; he had control of the aisle by himself from 7:30 to 8:00; it was his responsibility to keep the floor; he sweeps the floor if

the part-time boys are not there; it is the duty of the part-time boy to sweep if he is there; it is his duty to see that the counters are filled, to keep the area clean, and to supervise the area being kept clean.

"The leafy vegetables are some 20 to 30 feet away from the weighing scales; some are brought by hand and some in bags; cabbages are brought from the bin to the weighing scales in the buggy, some people do not use the buggy, some bring the produce to him in hand; they bring it by hand and walk up and down the aisle, and as they walk up and down the aisle particles fall off; they fall in the same aisle people walk in; when he is busy at the scales he can't sweep; the boy he had on duty with him at the time was in the back; he identified the broom in the photograph marked Plaintiff's Exhibit #1, as the same type broom he was using on the night of July 27; it is a push broom; it pushes the trash and debris in front of it; when he picks up the broom the trash is left in a pile about 3 feet square; he picks it up; the broom is 2½ to 3 feet wide. . . ."

He testified on redirect examination as follows:

"He used a broom similar to the one he had described in the picture to sweep the floor; that he did not pick up the broom and shake it from the time he left the front and got to the back; he moved down the aisle three times with the broom; he did this at 7:15, and after he swept it the floor was clean."

By reason of her fall plaintiff sustained a fracture of her left kneecap.

Plaintiff's evidence shows that in entering defendant's supermarket during business hours to purchase food therein she had invitee status. *Long v. Food Stores*, 262 N.C. 57, 136 S.E. 2d 275; Annot., 62 A.L.R. 2d p. 16.

However, defendant was not an insurer of her safety on its premises, and the doctrine of *res ipsa loquitur* is not applicable, and liability for injury to her attaches only for injuries resulting from actionable negligence on its part. *Long v. Food Stores, supra; Pratt v. Tea Co.*, 218 N.C. 732, 12 S.E. 2d 242.

Under the circumstances shown by plaintiff's evidence, the law imposed upon defendant the legal duty to exercise ordinary care to keep its aisles and passageways where she and other customers are expected to go in a reasonably safe condition, so as not unnecessarily to expose her and them to danger, and to give warning of hidden dangers or unsafe conditions of which it knows or in the exercise of reasonable supervision and inspection should know. *Raper v.*

*McCrory-McLellan Corp.*, 259 N.C. 199, 130 S.E. 2d 281; *Powell v. Deifells, Inc.*, 251 N.C. 596, 112 S.E. 2d 56; *Lee v. Green & Co.*, 236 N.C. 83, 72 S.E. 2d 33.

In *Raper v. McCrory-McLellan Corp., supra,* it is said

"The standard is always the conduct of the reasonably prudent man. The rule is constant, while the degree of care which a reasonably prudent man exercises, or should exercise, varies with the exigencies of the occasion. *Bemont v. Isenhour,* 249 N.C. 106, 105 S.E. 2d 431; *Diamond v. Service Stores,* 211 N.C. 632, 191 S.E. 358. For instance, what would constitute such care in a country non-service store would seem not to be adequate in a city self-service store through which passes a steady flow of customers who, because of the nature of the business, are constantly handling the merchandise."

In *Long v. Food Stores, supra,* it is said:

"The inviter is charged with knowledge of an unsafe or dangerous condition on his premises during business hours created by his own negligence or the negligence of an employee acting within the scope of his employment, or of a dangerous condition of which his employee has notice. In such cases the inviter is liable if injury to an invitee proximately results therefrom, because the inviter is deemed to have knowledge of his own and his employees' acts. *Raper v. McCrory-McLellan Corp., supra; Waters v. Harris, supra* [250 N.C. 701, 110 S.E. 2d 283]; *Hughes v. Enterprises,* 245 N.C. 131, 95 S.E. 2d 577; 65 C.J.S., Negligence, § 51, Knowledge of Defect or Danger, p. 545. But where the unsafe or dangerous condition is created by a third party, or where there is no evidence of the origin thereof, an invitee proximately injured thereby may not recover, unless he can show that the unsafe or dangerous condition had remained there for such length of time that the inviter knew, or by the exercise of reasonable care should have known, of its existence. *Waters v. Harris, supra; Hughes v. Enterprises, supra, Fox v. Tea Co.,* 209 N.C. 115, 182 S.E. 662."

No inference of negligence on defendant's part arises *merely* from a showing that plaintiff, a customer in defendant's store during business hours, fell and sustained an injury in the store. *Skipper v. Cheatham,* 249 N.C. 706, 107 S.E. 2d 625; Annot., 61 A.L.R. 2d p. 56.

Plaintiff's evidence and defendant's evidence favorable to her would permit a jury to find the following facts: Defendant operates

a self-service supermarket, and Butler, its employee at the weighing scales, had knowledge of the fact that the leafy vegetables in the store are some 20 to 30 feet away from the weighing scales; that some customers select and bring leafy vegetables by hand to the weighing scales, and as they walk up and down the aisle some particles of the leafy vegetables fall in the same aisle people walk in. This condition was created and maintained knowingly by defendant, and defendant could have foreseen in the exercise of ordinary care for the safety of its customers that such vegetable leaves on its floor would create an unsafe passageway, if not promptly removed. Defendant's employee Butler is charged with the duty of keeping this aisle clear, and it had not been swept according to his testimony after 7:15 p.m. Plaintiff about 8 p.m., after having some white potatoes weighed at the weighing scales, started to where her daughter was with a cart, and in walking down the aisle she stepped on a vegetable leaf in the aisle about half as large as her hand, her foot slipped, and she fell to the floor with her left knee under her; that this vegetable leaf was mashed, "all bruised up," and that there were skid marks on the floor; that all around this vegetable leaf were onion husks, lint, dirt, and pieces of vegetable leaves, and that this debris covered an area about 3 or 4 feet square. Considering the fact that defendant was operating a self-service supermarket serving many people, that particles of vegetables frequently fell off in being carried by hand to the weighing scales to the knowledge of defendant's employee Butler, and the other circumstances, the jury reasonably could find that there was required a higher degree of care by defendant in keeping the premises adjacent to the vegetable counter and weighing scales free from slippery rubbish than would be imposed upon one engaged in a business from which such perils are not reasonably expected to result; and that under the circumstances showing that the vegetable leaf on which plaintiff slipped and fell was mashed and bruised and that other debris was there, the jury could reasonably find that such a dangerous condition had existed for a sufficient length of time for defendant in the exercise of ordinary care for the safety of its customers to have discovered it and removed it before plaintiff's fall, and that defendant's failure to do so was negligence and was a proximate cause of plaintiff's injuries. In our opinion, and we so hold, plaintiff's evidence and defendant's evidence favorable to her make out a *prima facie* case of actionable negligence on defendant's part.

Defendant's contention that, even if defendant was guilty of actionable negligence, plaintiff was guilty of contributory negligence as a matter of law thereby barring any recovery by her necessitates an appraisal of her evidence in the light most favorable to her.

*Short v. Chapman,* 261 N.C. 674, 136 S.E. 2d 40; *Beasley v. Williams,* 260 N.C. 561, 133 S.E. 2d 227; *Bundy v. Powell,* 229 N.C. 707, 51 S.E. 2d 307. Measuring her evidence by this standard it is our opinion, and we so hold, that plaintiff's testimony that she was looking at the floor in the direction she was walking, that the way the light shone on the floor she could not see the floor "real good," that the tiles of the floor were gray and green, that the vegetable leaves were green, and that she could not see the debris on the floor until after she fell and Mr. Butler came up, does not show so clearly that no other conclusion can be reasonably. drawn therefrom that this unsafe and dangerous condition on the floor of the aisle where she fell was a patent and obvious danger which plaintiff in the exercise of reasonable care for her safety should have seen and avoided. Plaintiff has not proved herself out of court. *Lincoln v. R. R.,* 207 N.C. 787, 178 S.E. 601.

The trial court properly submitted the case to the jury.

The only assignments of error in the record other than formal ones are two assignments of error in respect to the evidence as to plaintiff's injuries. These assignments of error as to the evidence are deemed to be abandoned for the reason that defendant has not brought them forward and discussed them in its brief. Rule 28, Rules of Practice in the Supreme Court, 254 N.C. 783, 810.

The judgment below is
Affirmed.

HIGGINS, J., dissents.