CHARLES A. COOK AND SHIRLEY COOK, PLAINTIFFS v. WAKE COUNTY HOSPITAL
SYSTEM, INC., D/B/A WAKE MEDICAL CENTER, DEFENDANT

No. COA96-76

(Filed 18 March 1997)

**1. Trial § 491 (NCI4th)— motion for judgment treated as renewal of motion for directed verdict**

A motion for judgment pursuant to N.C.G.S. § 1A-1, Rule 50(b)(1) should be treated by the court the same as a renewal of an earlier motion for a directed verdict.

**2. Negligence § 152 (NCI4th)— negligence—motion for judgment—prima facie case—hospital—slip and fall—doctor—invitee**

In a negligence action brought by plaintiff, a doctor who had staff privileges and thus was an invitee on defendant hospital's premises, the trial court erred in granting defendant hospital's motion for judgment pursuant to N.C.G.S. § 1A-1, Rule 50(b)(1) where the plaintiff's evidence established a *prima facie* case of negligence and showed that a reasonable trier of fact could conclude that the doctor slipped on a wet floor; that defendant knew or should have known that the floor was wet; that defendant had a duty to warn plaintiff of dangers; and that the wet floor proximately caused plaintiff to sustain injury.

**3. Discovery and Depositions § 10 (NCI4th)— motion to compel—hospital accident report—written pursuant to hospital policy—not in anticipation of litigation**

An accident report prepared by defendant hospital's employee after plaintiff doctor's slip and fall was not prepared "in anticipation of litigation" and was thus discoverable in plaintiff's personal injury action where the hospital's accident reporting policy served a number of nonlitigation, business purposes, and the accident report would have been compiled by defendant, pursuant to its policy, regardless of whether plaintiff intimated a desire to file a suit against the hospital or whether litigation was ever anticipated by the hospital. N.C.C.S. § 1A-1, Rule 26(b)(3).

Judge SMITH concurring in part and dissenting in part.

Appeal by plaintiffs from judgment entered 26 April 1995, pursuant to G.S. 1A-1, Rule 50(b)(1), by Judge Henry V. Barnette, Jr., in

Wake County Superior Court. Heard in the Court of Appeals 7 October 1996.

Plaintiff Dr. Charles Cook (Cook) is a physician specializing in internal medicine with privileges at Wake Medical Center. Plaintiff Shirley Cook is Dr. Cook's wife. On the morning of 29 November 1990, Cook was making rounds in the hospital when his route took him to the Surgical Intensive Care Unit (SICU) section of the hospital. As Cook entered the SICU doorway, Cook fell by allegedly slipping on a wet spot on the floor.

As he fell, Cook spilled a cup of coffee he had been holding. Cook's impact with the floor rendered him unconscious and caused injuries to his head, left knee, and other parts of his body. Prior to Cook's fall, a housekeeper employed by the hospital had damp mopped SICU room 6, which is in the vicinity of the SICU entryway. After his fall, Cook observed a wet floor sign near his feet. The exact position of the sign, both before and after Cook's fall, is a matter of dispute. However, at least one employee did see the wet floor sign sliding down the hallway as plaintiff fell.

Upon realization that Cook had fallen, a number of hospital personnel, including Dale O'Neal (O'Neal), the nurse manager of the SICU, rushed to render aid. None of these hospital employees saw or felt a wet spot, other than spilled coffee, in the SICU entryway area. Shortly after the accident, and in accordance with then existing hospital policy, O'Neal prepared a routine report of the accident on a standard hospital form.

This form, denominated "Hospital Incident or Accident Report" (accident report), directs hospital personnel to "complete [and report] within 24 hours . . . any incident [or] happening which is not consistent with the routine operation of the hospital or the routine care of a particular patient." After the accident report is completed by an employee, they must forward it to "Risk Management," a hospital "committee." In this regard, Hospital administrative record Number 400.55 notes that it is the responsibility of "[t]he employee discovering, directly involved, or closest to the incident when it occurs [to] complete the [accident] report."

In accordance with existing hospital policy, O'Neal completed the accident report, and forwarded it to Jeannie Sedwick (Sedwick), risk manager of the hospital. Sedwick reported the incident to Claire Moritz (Moritz), legal counsel for Wake Medical Center. In response

to Sedwick's notification of Cook's fall in the SICU, Moritz requested the accident report be sent to her.

On 24 November 1993 plaintiffs filed suit against defendant Wake Medical Center alleging negligence and loss of consortium. During discovery, defendant refused production of the accident report filled out by O'Neal. The trial court denied plaintiffs' pretrial motion to compel production of the accident report. At trial, plaintiffs renewed their request for production of the report and asked the trial court to conduct an *in camera* review of the report. The trial court denied both requests.

After a trial on the merits, the jury could not reach a unanimous verdict and the trial court declared a mistrial. The trial court granted defendant's motion for judgment pursuant to Rule 50(b)(1) of the North Carolina Rules of Civil Procedure. Plaintiffs appeal the trial court's denial of their motions to compel and the trial court's decision to grant judgment for defendant pursuant to Rule 50(b)(1).

*Fuller, Becton, Slifkin, Zaytoun & Bell, P.A., by Charles L. Becton, Michele L. Flowers and Maria J. Mangano, for plaintiff-appellants.*

*Patterson, Dilthey, Clay, & Bryson, L.L.P., by Ronald C. Dilthey, Susan M. Easter and G. Lawrence Reeves, Jr., for defendant-appellee.*

EAGLES, Judge.

**[1]** We first consider whether the trial court erred in granting defendant's motion for judgment pursuant to Rule 50(b)(1) of the North Carolina Rules of Civil Procedure.

A motion for judgment pursuant to Rule 50(b)(1) is essentially a renewal of an earlier motion for a directed verdict. *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 368, 329 S.E.2d 333, 337 (1985). By making such a motion, the moving party asks that judgment be entered in accordance with the previous motion for directed verdict, notwithstanding any contrary verdict, or lack thereof, rendered by the jury. *Summey v. Cauthen*, 283 N.C. 640, 648, 197 S.E.2d 549, 554 (1973). The test for determining the sufficiency of the evidence when ruling on a motion for judgment is identical to that applied when ruling on a motion for directed verdict. *Id.* at 646, 197 S.E.2d at 553.

In ruling on a Rule 50(b)(1) motion, the trial court must consider the evidence in the light most favorable to the nonmoving party, giving it the benefit of all reasonable inferences to be drawn therefrom, resolving all conflicts in the evidence in its favor. *Smith v. Price*, 315 N.C. 523, 527, 340 S.E.2d 408, 411 (1986). The heavy burden carried by the movant is particularly significant in cases such as the one before us, in which the principal issue is negligence. Only in exceptional cases is it proper to enter a directed verdict against a plaintiff in a negligence case. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 473, 251 S.E.2d 419, 423 (1979). Issues arising in negligence cases are ordinarily not susceptible to summary adjudication because application of the prudent person test, or any other applicable standard of care, is generally for the jury. *King v. Allred*, 309 N.C. 113, 115, 305 S.E.2d 554, 553 (1983), *appeal after remand*, 76 N.C. App. 427, 333 S.E.2d 758 (1985), *disc. review denied*, 315 N.C. 184, 337 S.E.2d 857 (1986).

Thus, in order to survive defendant's motion for judgment, plaintiffs were obligated to present evidence at trial setting forth a *prima facie* case of negligence, *i.e.*, that defendant owed plaintiff Cook a duty of care, that defendant's conduct breached that duty, that the breach was the actual and proximate cause of plaintiffs' injury, and that damages resulted from the injury. *Lamm v. Bissette Realty, Inc.*, 327 N.C. 412, 416, 395 S.E.2d 112, 115 (1990).

Plaintiff Cook was an invitee on defendant's premises because of his status as a doctor with privileges at the hospital: A status bestowing mutual economic benefit to him and the hospital. *See Morgan v. Great Atlantic and Pacific Tea Co.*, 266 N.C. 221, 226, 145 S.E.2d 877, 881 (1966). Because Cook was an invitee, the hospital had a duty to keep the SICU entrances in a reasonably safe condition for invitees entering or leaving the premises. *Lamm v. Bissette Realty, Inc.*, 327 N.C. at 416, 395 S.E.2d at 115. Additionally, defendant "ha[d] a duty to warn invitees of hidden dangers about which [defendant] knew or should have known." *Lamm*, 327 N.C. at 416, 395 S.E.2d at 115.

[2] Under our rules, an invitee cannot recover "unless he can show that the unsafe or dangerous condition had remained there for such length of time that the inviter knew, or by the exercise of reasonable care should have known, of its existence." *Long v. National Food Stores, Inc.*, 262 N.C. 57, 60, 136 S.E.2d 275, 278 (1964). As we have often stated, "the mere existence of a condition which causes an injury is not negligence *per se*, and the occurrence of the injury does

**COOK v. WAKE COUNTY HOSPITAL SYSTEM**

[125 N.C. App. 618 (1997)]

not raise a presumption of negligence." *Spell v. Mechanical Contractors, Inc.*, 261 N.C. 589, 592, 135 S.E.2d 544, 547 (1964).

In *Smith v. Cochran*, 124 N.C. App. 222, 476 S.E.2d 364 (1996), this Court reversed the decision of the trial court granting defendants summary judgment in a slip and fall case. In *Smith* there was conflicting testimony about who had mopped the floor where plaintiff fell, whether the floor was still wet, and whether there were any warning signs placed on the floor. The *Smith* Court resolved the conflicting testimony in favor of the plaintiff on the grounds that there was " 'at least a reasonable inference that defendant was negligent in creating a wet slippery condition and in failing to adequately warn plaintiff of the presence of the slippery floor.' " 124 N.C. App. at 224, 476 S.E.2d at 365-66 (quoting *Rone v. Byrd Food Stores*, 109 N.C. App. 666, 670, 428 S.E.2d 284, 286 (1993)).

Here there is also conflicting testimony about whether the floor was wet, and whether defendant knew or should have known of the wet spot. Although Cook was knocked unconscious by the fall, Cook testified that almost immediately after he pushed open a set of solid double doors leading down the SICU hallway, he stepped and felt his foot slide; he looked down and saw "a wet streaking as if one can see when a floor is wet and slides something across it." He further testified that while lying on the floor he saw a wet floor sign at his feet; the wet floor sign he saw was in the middle of the hallway, a few feet inside the solid double doors.

One defense witness testified that when she heard Cook yell, she ran to the doorway to the hall where she saw Cook's body in mid-air and the wet floor sign sliding down the hallway. This circumstantial evidence corroborates Cook's testimony concerning the location of the sign. Furthermore, because of the presence and location of the sign, this circumstantial evidence permits the inference that defendant had knowledge that the floor was wet. In addition, although an employee of defendant denied that she had mopped the floor in the hall where Cook fell, she admitted to mopping the floor in close proximity to where he fell shortly before the fall. While that same employee testified that her job is to mop the rooms of the hospital instead of the hallways, she admitted that she would at times mop the hallways when necessary.

Viewing the evidence in the light most favorable to plaintiffs, a reasonable trier of fact could conclude that Cook slipped on a wet floor, that defendant knew or should have known that the floor was

wet, and that the wet floor proximately caused plaintiffs to sustain injury. Any inconsistencies in the evidence should be decided by the jury. Accordingly, we conclude that the trial court erred in granting defendant a directed verdict.

[3] We next consider whether the trial court erred in denying plaintiff's motion to compel production of the accident report.

Pursuant to the rules of discovery outlined by G.S. 1A-1, Rule 26(b)(3), documents prepared "in anticipation of litigation" are afforded a qualified immunity from discovery by the party seeking those documents. *Willis v. Duke Power*, 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976). In general, documents created in anticipation of litigation are considered "work product," or "trial preparation" materials, and are protected because "[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary." *Id.* (quoting *Hickman v. Taylor*, 329 U.S. 495, 516, 91 L.Ed. 451, 465 (1947)).

The phrase "in anticipation of litigation" is an elastic concept. The phrase itself indicates that its boundaries lack specific definition. In *Willis*, our Supreme Court defined this phrase as including "not only materials prepared after the party has secured an attorney, but those *prepared under circumstances in which a reasonable person might anticipate a possibility of litigation.*" *Willis*, 291 N.C. at 35, 229 S.E.2d at 201 (emphasis added) (citing to Wright and Miller, *Federal Practice and Procedure: Civil*, § 2024 at 197 (1970)). Unfortunately, the *Willis* decision offers little guidance as to what conditions constitute a "possibility of litigation." Our review of authorities from other jurisdictions indicates that North Carolina's definition of "in anticipation of litigation" is unique in its phraseology.

Plaintiffs assert that the facts of this case present an issue of first impression, and we are inclined to agree. For this reason, we rely in part on federal decisions for guidance in defining "in anticipation of litigation" as it applies here. *See Brewer v. Harris*, 279 N.C. 288, 292, 182 S.E.2d 345, 347 (1971) (directing us to federal and New York state courts for "enlightenment and guidance" on North Carolina's rules of civil procedure).

The *Willis* Court does instruct that "materials prepared in the ordinary course of business *are not protected*," and are thus, not considered materials "prepared under circumstances in which a reasonable person might anticipate a possibility of litigation." *Willis*, 291

N.C. at 35, 229 S.E.2d at 201 (emphasis added). The treatise cited by the *Willis* Court, 8 Wright, Miller and Marcus, *Federal Practice and Procedure: Civil*, § 2024 at 343 (1994), offers the following guidance:

> Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that *even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.*

(emphasis added).

In *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 401 (8th Cir. 1987), *cert. denied*, 484 U.S. 917, 98 L.Ed.2d 225 (1987), the Eighth Circuit of the United States Court of Appeals faced a work product argument almost identical to the one presented by the defendant here. There, defendant G.D. Searle & Co. claimed that its "Risk Management" documents were protected by the work product doctrine. *Id.* at 399, 400. The *Simon* Court (like the *Willis* Court) looked to Wright and Miller's treatise for authority, and observed: "Materials assembled in the ordinary course of business . . . *or for other nonlitigation purposes* are not under the qualified immunity provided by this subdivision." *Simon*, 816 F.2d at 401 (emphasis added) (quoting 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2024, at 198-99 (1970) (quoting Fed. R. Civ. P. 26(b)(3) advisory committee notes)).

Applying the analysis above, the *Simon* Court found G.D. Searle & Co.'s "risk management documents [to be] in the nature of business planning documents . . . ." *Simon*, 816 F.2d at 401. Among the business planning objectives achieved by G.D. Searle & Co.'s risk management system were "budget, profit and insurance considerations"—much like the risk management system used by the defendant here. *Simon*, 816 F.2d at 401. Because G.D. Searle & Co.'s risk management documents served a nonlitigation purpose (in addition to some purposes admittedly helpful in a litigation context), the *Simon* Court allowed discovery of the documents at issue. *Id.* at 402; and *see Brennan v. Walt Disney Productions, Inc.*, 1987 WL 15919 at *1 (D. Del. 1987) (finding Disney's use of accident "reports to have a broad[] use in Disney's business . . . [making them] discoverable").

The *Simon* Court's analysis is on all fours with the situation here. The record indicates that defendant had enacted an extensive risk management policy as part of its Administrative Manual and risk management plan. The stated purposes for the hospital policy, implementing a mandatory reporting procedure for incidents and accidents, go well beyond preparation for possible litigation. Policy 400.55 exists "[t]o identify areas of risk," and to facilitate the "report[ing of] any occurrence that is not consistent with the desired safe operation of the hospital or the care of the patients." In essence, and in defendant's own words, "[t]hese reports are administrative tools." According to hospital policy, accident reports are not discretionary, but are a required "responsibility" of any "employee discovering, directly involved, or closest to [an] incident when it occurs." They must be "turn[ed] in . . . within 24 hours to Risk Management." Once a report is taken, "Administration and Risk Management will make the final decision to report potential claims of liability," and "[a] monthly statistical summary of hospital incident reports is reviewed by the hospital's insurance broker . . . ." These employee reports are then compiled into "[m]onthly summar[ies] . . . for administrative and medical staff review and [are] presented to the Risk Management Committee and the Medical Staff Quality Assurance Committee and the Board of Directors."

Here defendant's accident reporting policy exists to serve a number of nonlitigation, business purposes. These business purposes impose a continuing duty on hospital employees to report any extraordinary occurrences within the hospital to risk management. These duties exist whether or not the hospital chooses to consult its attorney in anticipation of litigation. Here, absent any other salient facts, it cannot be fairly said that the employee prepared the accident report because of the prospect of litigation. In short, the accident report would have been compiled, pursuant to the hospital's policy, regardless of whether Cook intimated a desire to sue the hospital or whether litigation was ever anticipated by the hospital.

Defendant contends that, under the circumstances of Cook's fall, and "in the context of today's litigious society . . . only a person of extraordinary naivete would not expect Dr. Cook, an educated, sophisticated professional, to make a claim against the hospital." Were this the rule intended by the *Willis* Court, any accident report compiled by a business would be considered undiscoverable work product. We conclude that defendant's position is contrary to the discovery rules established by the *Willis* and *Simon* Courts, and there-

fore, the trial court erred in denying plaintiffs' motions to compel production of the accident report.

Reversed.

Judge MARTIN, John C., concurs.

Judge SMITH concurs in part and dissents in part.

Judge SMITH concurring in part and dissenting in part.

While I wholeheartedly agree with the majority that the accident report should have been produced, I dissent from that portion of the opinion which deals with defendant Hospital's tort liability for Cook's slip and fall.

It is well-settled in North Carolina that a business is not an insurer of its premises. *Rone v. Byrd Food Stores*, 109 N.C. App. 666, 669, 428 S.E.2d 284, 285 (1993); *Hull v. Winn-Dixie Greenville, Inc.*, 9 N.C. App. 234, 236, 175 S.E.2d 607, 609 (1970). The doctrine of *res ipsa loquitur* does not apply to slip and fall cases; that is, no inference of negligence arises from the mere fact of an accident or injury. *Skipper v. Cheatham*, 249 N.C. 706, 709, 107 S.E.2d 625, 628 (1959). Thus, defendant Hospital's duty to plaintiff Cook was that of " 'ordinary care to keep [the Hospital] in a reasonably safe condition . . . and to give warning of hidden perils or unsafe conditions insofar as they c[ould] be ascertained by reasonable inspection and supervision.' " *Rone*, 109 N.C. App. at 669, 428 S.E.2d at 285-86 (quoting *Raper v. McCrory-McLellan Corp.*, 259 N.C. 199, 203, 130 S.E.2d 281, 283 (1963)).

In the instant case, there is simply no evidence, other than speculation based on inference, that the Hospital should have been aware of the alleged wet spot prior to Cook's fall. Plaintiff Cook's testimony reveals that his left foot slipped as he took his first step into the SICU—approximately thirty inches into the SICU doorway. By all accounts, there was a "Wet Spot" sign in the doorway of Room 6— over six feet from where plaintiff fell—just prior to plaintiff Cook's fall. Not a single witness testified to the contrary. After Cook's fall, the "Wet Spot" sign had moved outward toward the hall, in the vicinity of Room 7.

Even given the benefit of the doubt of all the evidence to plaintiffs, I fail to see how the pre-fall location of the sign—in a room door-

way, two doors down and five-to-six-feet from where the fall initiated—could constitute notice of an entryway wet spot to defendant Hospital. Where the sign was located after the fall is irrelevant to such a question.

The majority's after-the-fact determinations, addressed in the language of negligence, are really no more than a *sub silentio* application of the doctrine of *res ipsa loquitur*. A fact such as the housekeeper mopping Room 6 (whom we note, specifically *denied* spot-mopping in the hall on this occasion), two doors down from the SICU entryway, tells us nothing about the condition of the SICU entryway. One must ask the question, if the housekeeper had placed the sign in Room 10, rather than Room 6, would the majority's inferences still obtain? What the majority is really saying is that, because a housekeeper mopped a room two doors down from where the doctor slipped and fell and there was a wet spot sign in that doorway, the Hospital *must have caused* a wet spot (or should have discovered it) in the SICU entryway over two yards away in another location. This is the exact inference of negligence from injury disclaimed by the *Skipper* Court. *Id.* at 709, 107 S.E.2d at 628.

Moreover, even if we were to assume the existence of a wet spot at the entryway, plaintiffs' case is still deficient. As the majority correctly states, an invitee cannot recover "unless he can show that the unsafe or dangerous condition had remained there for *such length of time* that the inviter knew, or by the exercise of reasonable care should have known, of its existence." *Long v. National Food Stores, Inc.*, 262 N.C. 57, 60, 136 S.E.2d 275, 278 (1964) (emphasis added). The majority is virtually silent on this duration issue, save for this statement: "[B]ecause of the presence and location of the sign . . . circumstantial evidence permits the inference that defendant had knowledge the floor was wet." I submit that no evidence exists as to how long the alleged entryway wet spot existed prior to Cook's fall.

Once again, though, the majority hangs its hat on the facts that Room 6 was mopped and that a sign was placed in that room's doorway. From this, the majority bootstraps the issues of: Actual or constructive notice of the wet spot, duration of the wet spot, and proximate cause. In essence, if a business mops in one discrete location, it becomes the insurer of all falls in all other tangential locations. I cannot concur in such an analysis. *See Skipper*, 249 N.C. at 709, 107 S.E.2d at 628 (A business is "not [an] insurer[] of the safety of [its] customers.").

Simply put, I do not find the post-fall location of the sign relevant to the issues of notice, duration of the wet spot, or whether defendant Hospital should have discovered the alleged wet spot upon reasonable inspection. Without competent evidence on these issues, a jury could not have found defendant Hospital negligent. Having failed to present competent evidence addressing necessary elements of their tort claim, plaintiffs' case is *ipso facto* fatally deficient. Therefore, in my opinion, the trial court correctly granted defendant Hospital's Rule 50(b)(1) motion. For these reasons,

I dissent.