MARY E. FULMORE, ADMINISTRATOR OF THE ESTATE OF PRISCILLA ANN MAULTSBY, Plaintiff v. GREGORY HOWELL and PFS DISTRIBUTION COMPANY, INC., Defendants/Third Party Plaintiffs v. INA LOFTIN HARPER, Third Party Defendant

No. COA07-984

(Filed 4 March 2008)

**1. Appeal and Error— appealability—interlocutory order—attorney-client privilege or disclosure—substantial right**

Although defendants' appeal in a wrongful death case from an order allowing plaintiff's motion to compel disclosure was an appeal from an interlocutory order, the trial court's determination of the applicability of the attorney-client privilege or disclosure affects a substantial right and is therefore immediately appealable.

**2. Discovery— social security number—exemption for court orders**

The trial court did not abuse its discretion in a wrongful death case by issuing an order compelling discovery of defendant individual's social security number because: (1) both N.C.G.S. § 132-1.10 and the Federal Privacy Act of 1974 provide exemptions to the general guidelines proscribing an agency or political subdivision's disclosure of an individual's social security number for court orders; and (2) the trial court took measures to minimize the potential loss of privacy resulting from the disclosure by requiring that all records be purged upon the completion of the lawsuit under N.C.G.S. § 1A-1, Rule 26(c).

**3. Discovery— non-privileged documents reviewed in anticipation of deposition—attorney-client privilege—work product doctrine**

The trial court did not abuse its discretion in a wrongful death case by issuing an order compelling discovery of the non-privileged documents defendant individual reviewed with his attorney in preparation for his deposition even though defendant contends they were protected by the attorney-client privilege and work product doctrine, because: (1) the trial court did not compel discovery of the communications between defendant and his attorneys, but rather the non-privileged documents that defendant reviewed; and (2) defendants failed to meet their burden of showing that the documents were protected by the work product

doctrine or attorney-client privilege, and defendants failed to explicitly state what documents they argue are protected.

## 4. Discovery— accident report—safety purpose—ordinary course of business

The trial court did not abuse its discretion in a wrongful death case by requiring defendant company to produce its internal investigation/accident report even though defendant contends it was protected by the attorney-client privilege and work product doctrine because: (1) the attorney did not contact the pertinent individuals until they had already begun the accident report, and the company's safety manual directed that the preparation of the accident report was for safety purposes, instead of for seeking legal advice as required for the attachment of the attorney-client privilege; and (2) the accident report was created in the ordinary course of business pursuant to the safety manual.

Appeal by Defendants from orders entered 7 April 2007 by Judge Thomas D. Haigwood in Wayne County Superior Court. Heard in the Court of Appeals 6 February 2008.

*Joretta Durant, for Plaintiff-Appellee.*

*Wharton, Aldhizer & Weaver, P.L.C., by Charles F. Hilton and Thomas E. Ullrich, pro hac vice, and Teague, Rotenstreich & Stanaland, by Paul A. Daniels, for Defendants-Appellants.*

*The Cochran Firm, by Hezakiah Sistrunk and Shean Williams, for Plaintiff.*

*Wallace, Morris, Barwick, Landis & Stroud, by Stuart L. Stroud, for Third-Party Defendant.*

ARROWOOD, Judge.

Gregory A. Howell (Howell) and PFS Distribution Company, Inc. (PFS) (together, Defendants), appeal from orders entered 5 April 2007 allowing the motions of Mary E. Fulmore, administrator of the estate of Priscilla Ann Maultsby (Plaintiff), to compel Howell to disclose (1) his social security number; (2) all non-privileged documents that Howell reviewed with his attorney in preparation for his deposition; and (3) the accident report generated by Howell and PFS's former Safety Director, Tommy Lawrimore (Lawrimore), on 6 August 2004. We conclude the trial court did not abuse its discretion in issuing the orders.

FULMORE v. HOWELL

[189 N.C. App. 93 (2008)]

Pilgrim's Pride, a corporation employing drivers of tractor-trailers to carry freight, merged with PFS on 29 September 2004, and owned a tractor-trailer operated by Howell, an employee of Pilgrim's Pride and PFS. On 5 August 2004, Howell approached a curve in the road while driving the tractor-trailer, and saw a car driven by Ina Harper approaching the tractor-trailer in the wrong lane of traffic. Howell made an effort to avoid colliding with Harper and, according to the allegations in Plaintiff's complaint, crossed the center line. Thereafter, the tractor-trailer driven by Howell collided with Priscilla Maultsby's vehicle. As a result of the collision, Maultsby died. Plaintiff alleged that Maultsby's death was caused by the negligence of Howell and Defendants.

On 5 August 2004, Lawrimore began his investigation of the accident, and on 6 August 2004, Howell completed, on a pre-printed form, an accident report as required by Pilgrim's Pride Fleet Safety Manual, Sections 13.1-13.6 and 16.13-16.14. Lawrimore also signed the report, and stated in his deposition that the accident report was made in the normal course of business, pursuant to the Pilgrim's Pride Fleet Safety Manual.

On 6 August 2004, Pilgrim's Pride contacted legal counsel, Mr. Thomas E. Ullrich (Ullrich), and requested that Ullrich direct the investigation of the collision for Pilgrim's Pride. The same day, Ullrich contacted Lawrimore, and assumed responsibility for the investigation. Prior to Ullrich's contact, Lawrimore and Howell had begun preparing the accident report pursuant to company policy.

On 2 February 2007, Plaintiff filed a motion to compel discovery seeking disclosure of the accident report prepared by Howell and Lawrimore after the collision. Plaintiff also sought discovery of Howell's social security number, and the non-privileged documents which Howell reviewed with his attorney in preparation for his deposition. On 10 April 2007, the trial court entered orders requiring that Defendants disclose the foregoing documents and social security number. From these orders, Defendants appeal.

---

[1] As an initial matter, we note that Defendants' appeal is interlocutory. Our Supreme Court has held, however, that "[t]he trial court's determination of the applicability of the [attorney-client] privilege or disclosure affects a substantial right and is therefore immediately appealable." *In re Investigation of Death of Eric Miller*, 357 N.C. 316, 343, 584 S.E.2d 772, 791 (2003); *see also Sharpe v. Worland*, 351 N.C.

159, 522 S.E.2d 577 (1999). Accordingly, this appeal is properly before the Court.

Our Standard of review "of a trial court's discovery order is . . . deferential: the order will only be upset on appeal by a showing that the trial court abused its discretion." *Isom v. Bank of Am., N.A.*, 177 N.C. App. 406, 410, 628 S.E.2d 458, 461 (2006). "To demonstrate an abuse of discretion, the appellant must show that the trial court's ruling was manifestly unsupported by reason, or could not be the product of a reasoned decision." *Nationwide Mut. Fire Ins. Co. v. Bourlon*, 172 N.C. App. 595, 601, 617 S.E.2d 40, 44 (2005).

## Federal Privacy Act of 1974

[2] In their first argument, Defendants contend that the trial court abused its discretion by requiring Howell to produce his social security number, because such compelled disclosure violated the Federal Privacy Act of 1974. We disagree.

The purpose of the Federal Privacy Act of 1974 (the Act) was to regulate the "collection, maintenance, use, and dissemination of personal information by Federal agencies[,]" such that individuals were "provide[d] certain safeguards . . . against an invasion of personal privacy[.]" Section 7 of the Act extends specifically to the protection of the disclosure of an individual's social security number. Section 7 of the Federal Privacy Act of 1974, Act of December 31, 1974, P.L. 93-579, § 7, 88 Stat. 1909, included in the History, Ancillary Laws and Directives of 5 U.S.C. § 552a, states the following:

(a)(1) It shall be unlawful for any Federal, State or local government agency to deny to any individual any right, benefit, or privilege provided by law because of such individual's refusal to disclose his social security account number.

(2) the provisions of paragraph (1) of this subsection shall not apply with respect to—

(A) any disclosure which is required by Federal statute, or

(B) the disclosure of a social security number to any Federal, State, or local agency maintaining a system of records in existence and operating before January 1, 1975, if such disclosure was required under statute or regulation adopted prior to such date to verify the identity of an individual.

The Act also provided exemptions to the general guidelines proscrib-

ing disclosure, specifically stating, in pertinent part, that individual records collected under the Act "shall [not be] disclosed" to "any person, or to another agency" unless disclosure would be "to an instrumentality of any governmental jurisdiction . . . for a civil or criminal law enforcement activity" or "pursuant to the order of a court of competent jurisdiction." Federal Privacy Act of 1974, Act of December 31, 1974, P.L. 93-579, § 7, 88 Stat. 1909; 5 U.S.C. § 552a(b)(11) (1974).

N.C. Gen. Stat. § 132-1.10 (2007), also recognizes the importance of regulating the disclosure of an individual's social security number by agencies or political subdivisions of the State, stating that the "social security number can be used as a tool to perpetuate fraud against a person and to acquire sensitive personal, financial, medical, and familial information, the release of which could cause great financial or personal harm to an individual." N.C. Gen. Stat. § 132-1.10(a)(1) (2007). This notwithstanding, the statute also recognizes "legitimate reasons for State and local government agencies to collect social security numbers and other personal identifying information from individuals[.]" N.C. Gen. Stat. § 132-1.10(a)(2) (2007). Agencies and political subdivisions must "minimize the instances this information is disseminated either internally within government or externally with the general public." N.C. Gen. Stat. § 132-1.10(a)(3). To protect an individual's social security number, N.C. Gen. Stat. § 132-1.10, requires the following:

> (b) Except as provided in subsections (c) and (d) of this section, no agency of the State or its political subdivisions, or any agent or employee of a government agency, shall do any of the following:

> (1) Collect a social security number from an individual unless authorized by law to do so or unless the collection of the social security number is otherwise imperative for the performance of that agency's duties and responsibilities as prescribed by law. Social security numbers collected by an agency must be relevant to the purpose for which collected and shall not be collected until and unless the need for social security numbers has been clearly documented.

> . . . .

> (c) Subsection (b) of this section does not apply in the following circumstances:

> . . . .

(2) To social security numbers or other identifying information disclosed pursuant to a court order, warrant, or subpoena.

Citing the Supremacy Clause of the United States Constitution, Article VI, Clause 2, Defendants specifically argue that the court's order requiring Howell to disclose his social security number violated section 7 of the Federal Privacy Act, and that the exemption for court orders in N.C. Gen. Stat. § 132-1.10, is preempted by the Act. Defendants, however, fail to recognize that the Act also provided an exemption for court orders. *See* Federal Privacy Act of 1974, Act of December 31, 1974, P.L. 93-579, § 7, 88 Stat. 1909; 5 U.S.C. § 552a(b)(11) (1974) (stating that individual records collected under the Act "shall [not be] disclosed" to "any person, or to another agency" unless disclosure would be "to an instrumentality of any governmental jurisdiction . . . for a civil or criminal law enforcement activity" or "pursuant to the order of a court of competent jurisdiction"). Notably, and contrary to Defendants' assertions on appeal, both N.C. Gen. Stat. § 132-1.10, and the Federal Privacy Act of 1974 contain exceptions to the general guidelines proscribing an agency or political subdivision's disclosure of an individual's social security number for court orders.

Because the trial court's order compelling discovery of Howell's social security number falls squarely within the exemption for court orders in both N.C. Gen. Stat. § 132-1.10, and the original Federal Privacy Act of 1974, which Defendants submit as authority for their argument, we conclude that the trial court did not abuse its discretion. We further note that the trial court here took measures to minimize the potential loss of privacy resulting from Howell's disclosure of his social security number, requiring that all records be purged upon the completion of the lawsuit pursuant to N.C.R. Civ. P. 26(c). This assignment of error is overruled.

## Attorney-Client Privilege & Work-Product

[3] Defendants next argue that the trial court abused its discretion by compelling Howell to disclose all non-privileged documents that Howell reviewed with his attorney in preparation for his deposition, because the documents were protected by the attorney-client privilege and the doctrine of work product. We disagree.

Our Supreme Court has held that, in deciding whether the attorney-client privilege attaches to a particular communication, the trial court must consider whether:

"(1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated and (5) the client has not waived the privilege."

*In Re Miller*, 357 N.C. at 335, 584 S.E.2d at 786 (quoting *State v. McIntosh*, 336 N.C. 517, 523-24, 444 S.E.2d 438, 442 (1994)). "If any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged." *Id.* The party who claims the privilege bears the burden of demonstrating that the communication at issue meets all the requirements of the privilege. *Id.* at 336, 584 S.E.2d at 787.

The work product doctrine prohibits an adverse party from compelling "the discovery of documents and other tangible things that are 'prepared in anticipation of litigation' unless the party has a substantial need for those materials and cannot 'without undue hardship . . . obtain the substantial equivalent of the materials by other means.' " *Long v. Joyner*, 155 N.C. App. 129, 136, 574 S.E.2d 171, 176 (2002) (quoting N.C. Gen. Stat. § 1A-1, Rule 26(b)(3)). Pursuant to the rules of discovery, N.C. Gen. Stat. § 1A-1, Rule 26(b)(3), "documents prepared in anticipation of litigation are afforded a qualified immunity from discovery by the party seeking those documents." *Cook v. Wake County Hospital System*, 125 N.C. App. 618, 623, 482 S.E.2d 546, 550 (1997) (holding that an accident report prepared by a hospital regarding a doctor's slip and fall did not constitute work product).

Defendants first contend that the trial court erred by requiring Howell to identify the documents he reviewed with his attorney to prepare for his deposition, because the information was protected by attorney-client privilege and the doctrine of work-product.

N.C. Gen. Stat. § 8C-1, Rule 612(b) (2007), regulates the disclosure of such non-privileged documents to an adverse party:

If, before testifying, a witness uses a writing or object to refresh his memory for the purpose of testifying and the court in its discretion determines that the interests of justice so require, an adverse party is entitled to have those portions of any writing or of the object which relate to the testimony produced, if prac-

ticable, at the trial, hearing, or deposition in which the witness is testifying.

Notably, the rule explicitly includes "deposition" testimony. Moreover, the official Commentary of Rule 612 state that "[i]f the writing is used before testifying for the purpose of testifying, disclosure is in the discretion of the court." Rule 612(c) addresses the proper procedure when the writing allegedly contains privileged material:

> If it is claimed that the writing or object contains privileged information or information not directly related to the subject matter of the testimony, the court shall examine the writing or object in camera, excise any such portions, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved. and made available to the appellate court in the event of an appeal. If a writing or object is not produced, made available for inspection, or delivered pursuant to order under this rule, the court shall make any order justice requires, but in criminal cases if the prosecution elects not to comply, the order shall be one striking the testimony or, if justice so requires, declaring a mistrial.

At the hearing on the motions to compel discovery, the attorney for the Plaintiff explained, "I don't want to know documents . . . [the Defendants' attorney] prepared" for his client." Rather, the attorney for Plaintiff requested discovery of nonprivileged documents Howell reviewed in preparation for his deposition, documents such as the "police report[,]" "anybody's deposition[,]" or "anybody's statements[.]" The attorney for Defendants argued, "I don't think [P]laintiff's lawyer gets to learn what Mr. Howell and I looked at together," to which the court replied, "I'm not asking you to do that. I'm asking him to respond to the question as to what documents [which were not protected by attorney-client privilege or the doctrine of work product] [did Howell review] in preparation of the deposition."

Defendants admit in their brief to this Court that "the documents themselves may not individually be privileged[,]" but posit that the communications between Howell and his attorneys are privileged. However, the trial court did not compel discovery of the communications between Howell and his attorneys, but rather, the non-privileged documents that Howell reviewed.

Furthermore, Defendants, the party asserting the protection, failed to meet their burden of showing that the documents were pro-

tected by the doctrine of work product or attorney-client privilege. *See Isom*, 177 N.C. App. at 410, 628 S.E.2d at 461; *In re Miller*, 357 N.C. at 336, 584 S.E.2d at 786. In fact, Defendants failed to explicitly state what documents they argue are protected. Because Defendants generally argue that the documents reviewed by Howell are either protected by the attorney-client privilege or the doctrine of work product, without submitting the allegedly privileged documents to either the trial court, *in camera*, or to this Court, offering a specific explanation as to why the documents are protected, we conclude that the trial court did not abuse its discretion in compelling, in accordance with N.C. Gen. Stat. § 8C-1, Rule 612, the discovery of non-privileged documents Howell reviewed in anticipation of his deposition. This assignment of error is overruled.

[4] Defendants next contend that the trial court erred by requiring PFS to produce its internal investigation/accident report, generated by Howell and Lawrimore, because the document was protected by attorney-client privilege and the doctrine of work-product.

"In general, documents created in anticipation of litigation are considered 'work product,' or 'trial preparation' materials, and are protected because '[d]iscovery was hardly intended to enable a learned profession to perform its functions either without wits or on wits borrowed from the adversary.' " *Cook*, 125 N.C. App. at 623, 482 S.E.2d at 550 (quoting *Willis v. Duke Power*, 291 N.C. 19, 35, 229 S.E.2d 191, 201 (1976)). However, "[m]aterials prepared in the ordinary course of business are not protected," and are thus, not considered materials "prepared under circumstances in which a reasonable person might anticipate a possibility of litigation." *Willis*, 291 N.C. at 35, 229 S.E.2d at 201. Documents prepared " 'in anticipation of litigation' include 'not only materials prepared after the other party has secured an attorney, but those prepared under circumstances in which a reasonable person might anticipate a possibility of litigation.' " *Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 310, 628 S.E.2d 851, 864 (2006) (quoting *Willis*, 291 N.C. at 35, 229 S.E.2d at 201).

*Willis*, 291 N.C. at 35, 229 S.E.2d at 201, and *Cook*, 125 N.C. App. at 623-24, 482 S.E.2d at 550, cite 8 Wright, Miller and Marcus, *Federal Practice and Procedure: Civil*, § 2024 at 343 (1994), offering the following guidance:

Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual sit-

FULMORE v. HOWELL

[189 N.C. App. 93 (2008)]

uation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that even though litigation is already in prospect, there is no work product immunity for documents prepared in the regular course of business rather than for purposes of the litigation.

*Id.* In *Cook*, this Court stated the following with regard to a hospital accident report: "In short, the accident report would have been compiled, pursuant to the hospital's policy, regardless of whether Cook intimated a desire to sue the hospital or whether litigation was ever anticipated by the hospital." 125 N.C. App. at 625, 482 S.E.2d at 551-52.

Here, the facts tend to show that the attorney, Ullrich, did not contact Lawrimore and Howell until they had already begun the accident report, and the procedural manual directs that the preparation of the accident report was for safety purposes, not for the purpose of seeking legal advice, as required for the attachment of attorney-client privilege. Moreover, the accident report was created in the ordinary course of the business of Pilgrim's Pride, pursuant to their safety manual, which negates the possibility of the protection of the report under the doctrine of work product.

With regard to the accident report in question Lawrimore stated the following in his deposition:

Q: . . . [Y]ou collected information regarding this accident and you talked to Mr. Howell based upon your normal practice as safety director of the . . . facility.

A: Yes, sir. . . .

A: We were doing an accident report; trying to get his statement.

Q: . . . An accident report, what is that?

A: Okay. It tells the vehicles involved. Now, this is something we do on our own. Tells the vehicles involved; who the drivers were; what they—their reason for the accident. I go through, you know, put all their drivers license information; get all that together.

Q: And you do this every time there is an accident?

A: I do this every time there is a DOT recordable accident.

Q: And that's something you do as safety director for all accidents, DOT recordable accidents, involving your drivers.

**FULMORE v. HOWELL**

[189 N.C. App. 93 (2008)]

A: Oh, yes.

Q: And you do that as a normal course of business as part of PFS?

A: Yes, sir.

Q: And you do that—and that's actually part of your policies and procedures at PFS to do that?

A: Yes, sir.

Q: And on this accident report that you called that is [an] official document for PFS?

A: Yes, sir.

Q: It's a business document.

A: Yes, sir.

Q: And that document is generated by you in the normal course of business whenever there is an accident?

A: Yes, sir.

Q: Did you get Mr. Howell to fill out this accident report?

A: Yes, sir. . . .

Q: So, before you got the call, you [were] already starting a process of filling out this accident report?

A: Yes, sir.

Q: And regardless of the call you would have still completed that accident report?

A: Yes, sir.

We further note that Pilgrim's Pride Corporation's Statement of Safety Policy contained the following "accident-control program":

All accidents involving a Company vehicle will be reviewed by the Accident Review Board. Responsibilities of the Accident Review Board will be as follows:

13.1 Identify the cause or causes of the accident. . . .

13.4 Make recommendations for corrective action to prevent reoccurrence of similar accidents in the future. . . .

BURRELL v. SPARKKLES RECONSTR. CO.

[189 N.C. App. 104 (2008)]

16.13 Completely and accurately fill out the Company Accident Report at the accident scene. An accident package should be in the glove compartment of each tractor. If not, contact your supervisor.

16.14 Accident Report Forms must be completed and submitted to the Corporate Fleet Safety Office within 24 hours after the accident, or no later than the next scheduled shift. . . .

Based on the foregoing evidence, we cannot say that the trial court abused its discretion in concluding that the accident report was not work product, nor was it protected by attorney client privilege. The report was "prepared in the ordinary course of business[.]" *Willis*, 291 N.C. at 35, 229 S.E.2d at 201. As in *Cook*, the accident report here "would have been compiled, pursuant to the [company] policy, regardless of whether . . . litigation was ever anticipated[.]" *Cook*, 125 N.C. App. at 625, 482 S.E.2d at 551-52. We conclude the trial court did not abuse its discretion in compelling the discovery of the accident report.

We conclude the trial court did not abuse its discretion in issuing the orders compelling the discovery of Howell's social security number, the non-privileged documents Howell reviewed in preparation for his deposition, and the accident report.

Affirmed.

Judges McCULLOUGH and ELMORE concur.