Ford v. Jurgens, 2021 NCBC 64.

STATE OF NORTH CAROLINA

WAKE COUNTY

JOHN FORD and CHRISTOPHER
KISGEN, derivatively on behalf of
TRIANGLE REAL ESTATE
INVESTORS ASSOCIATION, INC.,

Plaintiffs,

v.

CARL ARNOLD JURGENS, JR.;
KATHIE RUSSELL; TRIANGLE REAL
ESTATE INVESTORS ASSOCIATION
(TREIA), LLC; and TREIA
FOUNDATION, INC.,

Defendants,

v.

TRIANGLE REAL ESTATE
INVESTORS ASSOCIATION, INC.,

Nominal Defendant.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
20 CVS 4896

**ORDER AND OPINION ON
PLAINTIFFS' MOTION TO COMPEL**

1.      **THIS MATTER** is before the Court on Plaintiffs' Motion to Compel the production of documents that have been withheld from discovery by Defendants on the basis of attorney-client privilege and the work product doctrine (the "Motion"). (ECF No. 78.)  Following review and consideration of the Motion, briefs and exhibits filed in support and in opposition to the Motion, arguments of counsel during a hearing held on 24 June 2021, and other matters of record, and after having conducted an *in camera* review of the documents at issue, the Court determines that

the Motion should be **GRANTED** in part and **DENIED** in part for the reasons set forth below.

> *Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by Clint S. Morse, Katarina K. Wong, and James L. Bobbitt III, for Plaintiffs Christopher Kisgen and John Ford.*
>
> *Wilson Ratledge, PLLC, by Michael Ostrander, for Defendants TREIA Foundation, Inc. and Triangle Real Estate Investors Association (TREIA), LLC.*
>
> *Harris Sarratt & Hodges, LLP, by Donald J. Harris, and McAngus, Goudelock & Courie, PLLC, by Jeffrey D. Keister and Sean R. Madden, for Defendants Kathie Russell and Carl Jurgens, Jr.*
>
> *Wilson Ratledge, PLLC, by Michael Ostrander, and Goldberg Segalla, by Thomas M. Buckley and Allegra Amelia Sinclair, for Nominal Defendant Triangle Real Estate Investors Association, Inc.*

Earp, Judge.

## I.    BACKGROUND

2.    The underlying derivative action was filed on 9 April 2020 by John Ford and Christopher Kisgen ("Derivative Plaintiffs"), two former Board members of Triangle Real Estate Investors Association Inc. (the "Association" or "TREIA Inc."), a non-profit real estate investment association founded in 2003 to provide educational and networking benefits to its membership.  (Am. Compl., ¶¶ 1, 13, ECF No. 11; Aff. Kathie Russell, at Ex. D ("Articles of Incorporation"), ECF 9.5.)

3.    Plaintiffs complain on behalf of the Association that two other Association Board members, Kathie Russell ("Russell") and Carl Arnold Jurgens, Jr. ("Jurgens"), "through a series of misrepresentations and blatant omissions . . . took actions to redirect control and ownership of the [Association,]" (Am. Compl., ¶ 2), to

two newly formed entities: Triangle Real Estate Investors Association, LLC, a for-profit entity ("TREIA, LLC" or the "LLC"), and TREIA Foundation, Inc., a nonprofit corporation established for charitable purposes (the "Foundation") (collectively the "New Entities"), (Am. Compl. ¶ 11). They further allege that Russell and Jurgens did not reveal to either the Association's Board or its membership that they intended to be the sole members and owners of the new TREIA, LLC, that Russell and Jurgens misled the Association Board regarding its role in the governance of the new LLC, and that Russell and Jurgens improperly transferred funds from the Association to the New Entities in violation of the Association's Articles of Incorporation. (Am. Compl., ¶¶ 26, 37–39, 60–63.)

4.      Defendants deny any wrongdoing with respect to the formation of the New Entities or their funding from the Association's coffers. They contend that both the Board and the Association's membership approved the conversion of the Association into the New Entities, and that Russell and Jurgens acted to carry out the Association's decision. They argue that this action is brought by two former Board members who simply disagree with the strategic direction the Association has taken. (Resp. Br. Opp. Pls.' Mot. Compel 9, ECF No. 83.)

5.      As amended,[1] the Complaint alleges derivative claims for: (1) Breach of Fiduciary Duty against fellow Association Board members Jurgens and Russell, (2) Improper Distribution of monies transferred from the Association to the New Entities, (3) a Declaration that the dissolution of the Association and "all transactions

---

[1] An amended complaint was filed on 28 April 2020. (ECF No. 11.)

related thereto" are void, (4) Legal Malpractice and Attorney Fraud against Russell, (5) Common Law Trademark Infringement and Unfair Competition, and (6) Unfair and Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes.

6.     The case has followed an arduous path to reach this point. Earlier motions for preliminary injunction, to appoint a receiver and, by the Plaintiff, for partial summary judgment, have been denied. A Case Management Order was entered on 28 July 2020 and has been amended to extend the discovery period six times.

7.     Most recently, a series of discovery issues have erupted that the Court has heard pursuant to Business Court Rule ("BCR") 10.9. This Motion arises from one of the disputes that was not resolved during the BCR 10.9 process and pertains to drafts of the LLC's operating agreement and the individual Defendants' communications with counsel during the drafting process.

8.     Specifically, Plaintiffs state that they served requests for production on each of the Defendants separately on 26 October 2020. Request 23 sought, "[a]ll drafts of the LLC's Operating Agreement and all communications related to the LLC's Operating Agreement and any drafts thereof." (Pls.' Br. Supp. Mot. Compel 2, ECF No. 79.) All Defendants responded on 29 December 2020 objecting to Request 23 on multiple grounds, including "attorney-client privilege and work product." (Pls.' Br. Supp. Mot. Compel 2.) On 15 March 2021 Defendants produced, and later supplemented, a privilege log asserting that drafts of the requested operating

agreement, some containing redlined edits, and communications to and from counsel were protected from discovery by "the attorney-client privilege, privileged communication and work product." (Pls.' Br. Supp. Mot. Compel, at Ex. 1, ECF No. 79.1.)

9.      Plaintiffs filed the Motion on 19 April 2021 requesting that the Court compel production of drafts of the operating agreement that were created for the LLC, along with the communications to and from counsel that were generated during the drafting process.

10.     Plaintiffs argue that these documents are relevant to their claims that Russell and Jurgens misled the Association's Board and its members—both affirmatively and by omission—into changing the corporate structure so that Russell and Jurgens could take control of the Association and its assets for themselves. They point to fact disputes that have arisen concerning the terms of the operating agreement. (Pls.' Br. Supp. Mot. Compel 12.)

11.     In response to Defendants' objection that the requested documents are protected by the attorney-client privilege and/or the work product doctrine, Plaintiffs argue that the work product doctrine is inapplicable, that Defendants waived the attorney-client privilege by putting the advice they received from counsel at issue, that drafts of the Operating Agreement are not confidential communications, and that, in any event, the fiduciary and crime-fraud exceptions to the attorney-client privilege apply such that the documents are not protected.

12.     Having reviewed the briefs submitted and heard the arguments of counsel, the Court determined that an *in camera* review of the documents at issue was appropriate.  (*See* Order Following Conference, ECF No. 92.)  Defendants submitted the documents in question, which fall into two categories: (1) drafts of the LLC's Operating Agreement; and (2) e-mail communications between and among Russell, Jurgens, Donald Harris (counsel for Russell and Jurgens), and attorneys of the Wilson Ratledge law firm (representing the Association, the LLC, and the Foundation).  The Court has conducted its review, and the Motion is ripe for disposition.

## II.     ANALYSIS

13.     The Court starts with the framework for determining whether the documents at issue are protected from discovery by either the attorney-client privilege or the work product doctrine.

### A.     Attorney-Client Privilege

14.     It is well-established that in North Carolina, the attorney-client privilege applies if: "(1) the relation of the attorney and the client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated[,] and (5) the client has not waived the privilege." *State v. Murvin,* 304 N.C. 523, 531 (1981); *see also Window World of Baton Rouge, LLC v. Window World, Inc.,* 2019 NCBC

LEXIS 54, at \*23 (N.C. Super. Ct. 16 Aug. 2019), *aff'd per curiam*, 377 N.C. 551 (2021); *Morris v. Scenera Research, LLC*, 2011 NCBC LEXIS 34, at \*14 (N.C. Super. Ct. 26 Aug. 2011). "If any one of these five elements is not present in any portion of an attorney-client communication, that portion of the communication is not privileged." *In re Investigation of the Death of Miller*, 357 N.C. 316, 335 (2003).

15. Given its impact, the attorney-client privilege is construed strictly. *Evans v. United Servs. Auto. Ass'n*, 142 N.C. App. 18, 31 (2001) (providing that "courts are obligated to strictly construe the privilege"); *State v. Smith*, 138 N.C. 700, 703 (1905) ("As the rule of privilege has a tendency to prevent the full disclosure of the truth, it should be limited to cases which are strictly within the principle of the policy that gave birth to it.") (quotation marks omitted).

16. The party seeking to utilize the attorney-client privilege as a shield from discovery bears the burden of proof. *Wachovia Bank v. Clean River Corp.*, 178 N.C. App. 528, 531 (2006). Here, that burden is on Defendants.

## B. Work Product Doctrine

17. In contrast to the robust protection bestowed by the attorney-client privilege, the work product doctrine provides limited immunity from discovery for documents and other tangible things prepared "in anticipation of litigation." N.C.G.S. § 1A-1, Rule 26(b)(3). Once the party invoking the doctrine establishes that the documents or things in question were prepared in anticipation of litigation, work product immunity attaches unless the other party establishes that he has "substantial need of the materials in preparation of the case" and that he "is unable

without undue hardship to obtain the substantial equivalent of the materials by other means." *Id.* Even so, if the work product contains the mental impressions, conclusions, opinions, or legal theories of an attorney concerning the litigation in which the material is sought, the court will not order disclosure of that information. *Id.*

18.     Although the reach of the work product doctrine is broader than that of the attorney-client privilege, because it is a limit on discovery, it, too, must be narrowly construed. *Evans,* 142 N.C. App. at 29 ("Because work product protection by its nature may hinder an investigation into the true facts, it should be narrowly construed consistent with its purpose . . . .") (citation omitted). Therefore, not every document created when litigation looms is subject to its protection. To be covered by the work product doctrine, the document must be created in anticipation of litigation. *See Willis v. Duke Power Co.*, 291 N.C. 19, 35 (1976); *Evans*, 142 N.C. App. at 29.

19.     However, "[t]he phrase 'in anticipation of litigation' is an elastic concept[,]" and determining whether a document was or was not prepared in anticipation of litigation is dependent on the circumstances. *Cook v. Wake Cty. Hosp. Sys.*, 125 N.C. App. 618, 623 (1997). Federal decisions provide some guidance. *Brewer v. Harris,* 279 N.C. 288, 292 (1971) (Where our case law on civil procedure is not definitive, our Supreme Court directs us to federal decisions for "enlightenment and guidance.") (citation omitted).

20.     While the federal courts are not aligned with respect to the wording used to define when a document is prepared "in anticipation of litigation," they do require

that the prospect of litigation—rather than business considerations—be the central motivator. S*ee United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (applying the "because of" test to "determine whether the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation") (citation and quotation marks omitted); *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992) ("[I]n resolving the question of whether matters are immune from discovery because of the work product rule, attention must be turned first to whether the documents or tangible things were prepared in anticipation of litigation or for trial . . . ."); *United States v. Davis,* 636 F.2d 1028, 1040 (5th Cir. 1981), *cert. denied,* 454 U.S. 862 (1981) ("[T]he primary motivating purpose behind the creation of the document was to aid in possible future litigation.").

21.     If documents are prepared in the ordinary course of business—even if drafted in response to an event that portends litigation—they are not work product. *Saunders v. Hull Prop. Grp., LLC*, No. COA17-1115, 2018 N.C. App. LEXIS 254, at *7 (N.C. Ct. App. 20 Mar. 2018) (unpublished) (stating that the North Carolina Court of Appeals "has consistently held that reports published in accordance with a company's established policy are not protected work product, even when drafted in response to an event that might foreseeably give rise to litigation"); *Fulmore v. Howell*, 189 N.C. App. 93, 102 (2008) (concluding that a report created pursuant to a safety manual was prepared in the ordinary course of business negating "the possibility of the protection of the report under the doctrine of work product"); *Evans,*

142 N.C. App. at 30 (affirming the trial court's denial of work product immunity over the defendant-insurers' "claims diary" because "the investigation stage of the claims process is one carried out in the ordinary course of an insurer's business"); *Cook*, 125 N.C. App. at 625 (reversing the trial court's denial of a motion to compel production of an accident report that "would have been compiled, pursuant to the hospital's policy, regardless of whether [the plaintiff] intimated a desire to sue the hospital or whether litigation was ever anticipated by the hospital").

22.     This is true even if litigation involving the document might result.  *See, e.g.*, *United States v. El Paso Co.*, 682 F.2d 530, 542–43 (5th Cir. 1982), *cert. denied*, 466 U.S. 944 (1984) (papers relating to the preparation of tax returns do not gain work product immunity solely because the IRS may conduct an audit); *Status Time Corp., v. Sharp Elecs., Corp.*, 95 F.R.D. 27, 29 (S.D.N.Y. 1982) (documents relating to filing for or maintaining a patent are not protected solely because litigation of the patent right is a possibility); *In re Penn Cent. Commercial Paper Litig.*, 61 F.R.D. 453, 468 (S.D.N.Y. 1973) (finding that offering circulars are not protected solely because liability may result or because their author is a lawyer).

23.     The Court now turns to the documents that are the subject of the Motion.

**Drafts of the Operating Agreement**

24.     The drafts at issue include a first draft of the Operating Agreement prepared by Kathie Russell (identified by LLC as Exhibit B) and subsequent drafts with edits made either by attorneys from Wilson Ratledge, who represent the LLC,

or by Russell or Jurgens (identified by LLC as "Exhibits D, F, G, I, J, L, O, Q). The LLC's final Operating Agreement (Exhibit R) has been produced to Plaintiffs and is already a part of the record. (*See* Aff. Kathie Russell, at Ex. B ("TREIA, LLC Operating Agreement"), ECF No. 9.3.)

25. Defendants argue that the requested drafts exchanged between counsel for the LLC[2] and Russell and Jurgens constitute attorney-client privileged communications because they contain redlined changes and communications between the LLC and its counsel made in confidence about a matter for which counsel was being professionally consulted. (Resp. Br. Opp. Pls.' Mot. Compel 3–5.)

26. However, Plaintiffs contend that the operating agreement—at least, once it was final—was not intended to be a confidential document. Moreover, they argue that even if drafts of the operating agreement are protected by the attorney-client privilege, any such privilege has been waived because Defendants put advice they received from counsel "at issue." Alternatively, they argue that either the fiduciary exception or the crime-fraud exception to the attorney-client privilege requires disclosure of the drafts. (Pls.' Br. Supp. Mot. Compel 8–15.) The Court addresses these arguments in turn.

A. **Confidential Communication**

27. A communication intended to be disclosed to third parties is not confidential. *Window World of Baton Rouge, LLC,* 2019 NCBC LEXIS 54, at \*73. In

---

[2] The Court notes that Mr. Harris was also privy to these communications. However, no party has raised an issue regarding waiver or application of the common-interest doctrine and, therefore, the Court will not raise one.

many instances, however, determining when one's intention regarding a draft document changes from an intention to seek and receive attorney advice to an intention to publish the document to others can be difficult. In this case, however, e-mail communications accompanying the drafts, beginning with the first, indicate that they were sent between clients and counsel for discussion and revision. Even those portions of the drafts that went through the process unchanged and became part of the final operating agreement were first subject to attorney scrutiny. Other portions of the drafts reflect legal advice in the form of marginal comments and redline edits made by counsel. Given this e-mail traffic revealing that Defendants' intent was not to publish the drafts until their counsel had fully advised them regarding revisions, the drafts are protected by the attorney-client privilege. *Morris,* 2011 NCBC LEXIS 34, at \*21–22 (noting in *dicta* that "drafts of potential [contracts] prepared by counsel for client review would be privileged up to the point at which they were intended to be given" to a third party); *cf. Window World of Baton Rouge, LLC,* 2019 NCBC LEXIS 54, at \*75–76 (involving drafts that appear to have been intended for disclosure to third parties).

      **B.**     **Implicit (Subject Matter) Waiver: Putting Legal Advice at Issue**

28. Plaintiffs argue that Defendants implicitly waived the privilege by "putting at issue" the advice received from counsel regarding the legality of the process used to transition to the New Entities. Specifically, they point to a 6 April 2020 e-mail from several Board members, including Jurgens and Russell, telling the membership: "**It's important to know the attorney has reviewed the**

**restructuring initiative and confirmed that it is being done in a manner that complies with applicable laws and regulations**." (Pls.' Br. Supp. Mot. Compel, at Ex. 12, ECF No. 79.12.)

29. Given the import of the privilege and the fact that Defendants did not expressly state their intention to waive the privilege, the Court treads cautiously in the area of implied waiver. *See, e.g., In re Keeper of Records,* 348 F.3d 16, 23 (1st Cir. 2003) (explaining that the evaluation of claims for implied waiver of attorney-client privilege "demands a fastidious sifting of the facts and a careful weighing of the circumstances"); *United States v. Desir,* 273 F.3d 39, 46 (1st Cir. 2001) ("Implied waiver requires a careful weighing of the facts and 'should not be applied cavalierly.'") (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 186 (2d Cir. 2000)).

30. This Court uses a balancing approach to determine the scope of subject matter waiver so that the result is remedial, rather than punitive. *Technetics Grp. Daytona, Inc. v. N2 Biomedical, LLC*, 2018 NCBC LEXIS 116, 17–19 (N.C. Super. Ct 8 Nov. 2018). Under this approach, when one party waives the privilege to use a portion of the party's communications with the party's attorney to advance a position in litigation, the court broadens the waiver to eliminate any unfair advantage. "On the other hand, 'when the disclosure does not create an unfair advantage, courts typically limit the waiver to the communications actually disclosed.'" *Id.* at *18 (quoting *Teleglobe Commc'ns v. BCE, Inc.*, 493 F.3d 345, 361 (3d Cir. 2007)).

31.  In this case, the e-mail purporting to put attorney advice at issue is dated 6 April 2020 and refers to the past (". . . the attorney has reviewed . . . and confirmed"). The earliest date of the documents at issue—drafts of the Operating Agreement and accompanying communications with counsel—is 9 April 2020. Consequently, the e-mail above, which predates the documents at issue, could not have referred to them and, therefore, cannot be considered a waiver as to them. Indeed, the documents produced for *in camera* review do not express an opinion regarding whether the Association's restructuring efforts complied with the law or not. Moreover, it is unclear who "the attorney" referenced is and whether that person is the same counsel consulted with respect to the LLC's operating agreement.

32.  On these facts the Court finds that the 6 April 2020 e-mail referencing a review done by an attorney at some point in the past does not result in waiver of the privilege with respect to subsequent drafts of the LLC's operating agreement and the accompanying attorney-client communications.

## C.   **Fiduciary Exception**

33.  Plaintiffs contend that attorneys from Wilson Ratledge represented both the Association and the LLC. Therefore, they argue, Plaintiffs, as members of the Association's Board, should be privy to all communications with Wilson Ratledge, including the redlined drafts of the LLC's operating agreement and the accompanying e-mail communications. (Reply Br. Supp. Mot. Compel 5, ECF No. 85.)

34.  Defendants respond that the documents and communications at issue only relate to the LLC and not the Association, and that the lawyers were working

only for the LLC at the time. They further argue that, in any event, the lawyers owed no fiduciary duty to these particular Plaintiffs who were not members of the Association's Board at the time of the communications. (Resp. Br. Opp. Pls.' Mot. Compel 5–7.)

35.     The fiduciary exception has not been recognized by the North Carolina state courts. However, non-binding authority suggests that in some circumstances a shareholder in a derivative action may access documents that a corporation claims are protected from the attorney-client privilege if the shareholder shows good cause as to why the privilege should not apply. *See*, *e.g., Marketel Media, Inc. v. Mediapotamus, Inc.*, No. 5:13-CV-427-D, 2015 U.S. Dist. LEXIS 76523, at *12 (E.D.N.C. 11 June 2015) ("In some shareholder derivative contexts, the so-called fiduciary exception to the attorney-client privilege can require, for good cause, disclosure of communications covered by the corporation's privilege to dissident shareholders.").

36.     However, in jurisdictions that have recognized the fiduciary exception, "courts have generally found the fiduciary exception inapplicable to communications made during a time when the parties' interests were not aligned or when the subject of the communications did not involve matters that a fiduciary would owe a duty to disclose to a beneficiary." *Herrmann v. Rain Link, Inc.*, No. 11-1123-RDR, 2012 U.S. Dist. LEXIS 50553, at *6 (D. Kan. 11 Apr. 2012).

37.     Thus, even if the exception were to be recognized in this State's jurisprudence, it is undisputed that the parties' interests were not aligned when the

communications occurred. (Pls.' Br. Supp. Mot. Compel 3–6.) Accordingly, the Court concludes that the fiduciary exception is inapplicable.

### D.    Crime-Fraud Exception

38. Plaintiffs contend that the crime-fraud exception to the attorney-client privilege applies because the communications at issue were generated as part of an effort to carry out fraudulent activity. Specifically, Plaintiffs allege that counsel was retained to assist Defendants' effort to "paper over" Defendants' secret, true intentions with respect to the LLC's ownership and its finances.

39. Defendants contend that preparation of the Operating Agreement was not activity in furtherance of fraud but was merely to record in written form what Defendants contend had already been decided. Russell and Jurgens argue that, prior to engaging in the drafting process with counsel, they were forthcoming about their position with respect to both the ownership of the LLC and its funding but that Plaintiffs simply did not agree with them. In short, Defendants assert that the operating agreement does nothing more than reflect their stated position. They contend, therefore, that Plaintiffs have not made a showing sufficient to meet their burden for asserting the crime-fraud exception.

40. The crime-fraud exception eliminates attorney-client privilege protection when a client uses legal representation for an improper purpose such as to commit or facilitate a crime or fraud. *Miller*, 357 N.C. at 335 ("the attorney-client privilege cannot serve as a shield for fraud or as a tool to aid in the commission of future criminal activities; if a communication is not 'made in the course of seeking or

giving legal advice for a proper purpose,' it is not protected.") (quoting *State v. Jennings*, 333 N.C. 579, 611 (1993)) (citation and quotation marks omitted); *see also State v. Davenport*, 227 N.C. 475, 498 (1947) ("the communication must have been made in the course of seeking legal advice for a proper purpose; hence, no privilege exists where advice is sought in aid of a contemplated violation of law."); *Window World of Baton Rouge, LLC*, 2019 NCBC LEXIS 54, at *39–40.

41.    Unlike the fiduciary exception, North Carolina courts have recognized the crime-fraud exception to the attorney-client privilege. *See Miller*, 357 N.C. at 335 (noting that "[w]hen certain extraordinary circumstances are present, the need for disclosure of attorney-client communications will trump the confidential nature of the privilege") (citing *United States v. Zolin*, 491 U.S. 554 (1989)); *Window World of Baton Rouge, LLC*, 2019 NCBC LEXIS 54, at *39. Even so, the case law defining the contours of the exception is limited. *Window World of Baton Rouge, LLC*, 2019 NCBC LEXIS 54, at *42.

42.    As explained by Chief Judge Bledsoe in *Window World of Baton Rouge, LLC*, the party invoking the crime-fraud exception must make a *prima facie* showing that otherwise privileged communications fall within the exception. *Id.* at *43 (citation omitted). "The invoking party must show that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud." *Id.* (citation and quotation marks omitted). "Prong one of this test is satisfied

by a *prima facie* showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed." *Id.* at *43–44. "Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity." *Id.* at *44.

43.     Given the importance of the attorney-client privilege to North Carolina's jurisprudence and the resulting scrutiny that should be applied to any exceptions, *Miller,* 357 N.C. at 331, parties advancing the crime-fraud exception must prove the *prima facie* case by a preponderance of the evidence. *Window World of Baton Rouge*, 2019 NCBC LEXIS 54 at *45–46 (citing *In re Napster Copyright Litig.,* 479 F.3d 1078, 1095 (9th Cir. 2007) ("requiring a moving party to establish the existence of the crime-fraud exception by a preponderance of the evidence is consonant with the importance of the attorney-client privilege.").

44.     Furthermore, the crime-fraud exception applies only when the client has engaged the services of a lawyer "in furtherance of *future* illegal conduct." *Zolin*, 491 U.S. at 556 (emphasis added); *see also In re Grand Jury Subpoena*, 220 F.R.D. 130, 151–52 (D. Mass. 2004). Past or completed crimes or frauds do not trigger the exception. <u>*Zolin*</u>, 491 U.S. at 556.

45.     At the time the communications in this case occurred, Defendants had already communicated their intention to be the only members of the LLC—at least for the time-being—and to finance the LLC and the Foundation with Association funds. While they may or may not have fully understood the legal ramifications

resulting from the transfer of Association funds at the time the transfer occurred, Defendants point out that the operating agreement that was thereafter created clearly reflected the distribution to the New Entities. Accordingly, Plaintiffs have not alleged that the attorneys were consulted to facilitate criminal or fraudulent activity that was ongoing or was to take place in the future.

46. Plaintiffs' reliance on *United States v. Gorski*, 807 F.3d 451 (1st Cir. 2015), is unavailing. In *Gorski*, the defendant engaged counsel to create corporate documents crafted to appear as though they were signed before the date of applicable regulatory amendments so that the defendant could perpetuate a false impression with the U.S. Small Business Association. After he was indicted and the government issued subpoenas for documents, the defendant withheld certain documents containing communications with his counsel on the basis of the attorney-client privilege. The prosecution argued that, even if the documents were covered by the privilege, the crime-fraud exception applied because the defendant had used the attorneys' work in furtherance of his illegal scheme. The district court agreed that the exception applied because there was a reasonable basis to believe that the attorney-client communications "were intended by the client to facilitate or conceal the criminal or fraudulent activity." *Id.* at 461. The First Circuit affirmed.[3] *Id.* at 462.

---

[3] Although the First Circuit's "reasonable basis" standard differs from the "preponderance of the evidence" standard adopted herein, this difference is not determinative of the outcome in the case before the Court.

47.     As stated above, in this case the attorney-client communications occurred after Defendants made plain their position that the LLC would be owned, at least initially, by them and funded by monies from the Association. There is no evidence to suggest that the attorneys were engaged to help Plaintiffs conceal this position or otherwise to create an ongoing subterfuge. To the contrary, the operating agreement at issue documents Defendants' position. Whether or not the Association Board or its members were aware of these aspects of the restructuring at earlier, key times, is a different issue.

48.     Therefore, the Court concludes that, at least as to the attorney-client communications at issue, Plaintiffs have failed to carry their burden to show by a preponderance of the evidence that the crime-fraud exception applies to defeat the assertion of attorney-client privilege over drafts of the operating agreement.

### E.     <u>Work Product Doctrine</u>

49.     As a governing document for the LLC, the operating agreement has a distinct business purpose separate and apart from any concern about possible litigation. Stated differently, although the threat of litigation may have been in the air, the independent business reason for drafting the operating agreement to govern the LLC strips the resulting drafts from work product protection. Therefore, any drafts not protected by the attorney-client privilege would not be shielded from discovery by the work product doctrine. Here, however, the attorney-client privilege insulates the drafts at issue from discovery.

**Related E-mail Communications**

50.     Defendants claim that e-mails accompanying and related to the draft Operating Agreements sent among members of the group of Russell, Jurgens, various counsel at Wilson Ratledge, and Donald Harris are protected from discovery by the attorney-client privilege.

51.     A number of the e-mails are in the nature of "transmittal" communications.  When the e-mails do not furnish or request legal advice and are merely transmittal documents, they are not attorney-client privileged communications.  *Window World of Baton Rouge, LLC,* 2019 NCBC LEXIS 54, at *68–72 (gathering cases).  Accordingly, the Court finds that e-mails identified as Exhibit N, Exhibit P, and Jurgens-Russell Exhibit C are subject to discovery and should be produced.

52.     On the other hand, more substantive e-mails are protected by the privilege.  There is no dispute that Wilson Ratledge counsel represented the LLC, (Reply Br. Supp. Mot. Compel 5 (arguing that Wilson Ratledge counsel represented both the Association and the LLC)), the communications were intended to be confidential and relate to a matter about which counsel was being professionally consulted, and the communications were made in the course of giving or seeking legal advice for a proper purpose.  For the reasons discussed above, Plaintiffs' arguments regarding waiver or application of an exception to the privilege does not change the result.  The attorney-client privilege protects these communications.  Therefore, e-mails identified as Exhibit A, Exhibit C, Exhibit E, Exhibit H, Exhibit K, Exhibit M,

Jurgens-Russell Exhibit A, and Jurgens-Russell Exhibit B are privileged and are not subject to discovery.

## III. CONCLUSION

53. For the reasons state above, Plaintiffs' Motion to Compel is GRANTED in part and DENIED in part. The Court ORDERS Defendants to produce e-mails identified as Exhibit N, Exhibit P, and Jurgens-Russell Exhibit C within ten days from entry of this Order. The remaining documents are protected by the attorney-client privilege and shall not be produced.

IT IS SO ORDERED this the 5th day of October, 2021.

/s/ Julianna Theall Earp
_____

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases